[L.A. No. 30199. In Bank. Jan. 23, 1975.]

AIDA LA MANNA, Plaintiff and Appellant, v.
LOUIS F. STEWART, Defendant and Appellant.

414

Renzi & Kilbride, Ernest L. Graves and Fred Kilbride for Plaintiff and Appellant.

Gilbert, Kelly, Crowley & Jennett, Roger E. Kelly, Ellis J. Horvitz, Arthur E. Schwimmer and Abe Mutchnik for Defendant and Appellant.

**OPINION**

**MOSK, J.**—Plaintiff instituted this action to recover damages for personal injuries sustained when she was struck by defendant's automobile. Defendant denied all material allegations of the complaint and pleaded the defense of contributory negligence. The jury returned a

verdict for defendant, and judgment was entered accordingly. Defendant appeals from an order granting plaintiff's motion for new trial, and plaintiff cross-appeals from the judgment. As will appear, we have concluded that both the order and the judgment must be reversed.

*Defendant's Appeal From the Order Granting a New Trial*

Judgment for defendant was entered, and notice of entry of judgment mailed, on November 18, 1971. On November 26 plaintiff filed notices of motions for judgment notwithstanding the verdict and for a new trial on the ground of insufficiency of the evidence. On December 23, 1971, these matters were heard and the court announced from the bench that the motion for judgment notwithstanding the verdict was denied but the motion for new trial was granted. In so doing the court gave an oral statement of its reasons for granting the new trial.[1] The written minute order filed that day, however, stated only that "Motion is granted. Verdict is vacated on all the issues. The court shall file its specifications and mail a copy [to] each counsel."

Despite this recital, the court did not timely file such a specification of reasons. Instead, it took no action whatever until February 18, 1972, when it filed a "nunc pro tunc minute order" purporting to "amend" the minute order of December 23, 1971, by adding thereto a verbatim transcription of the oral statement of reasons given on the prior date.

Code of Civil Procedure section 657 provides in relevant part that "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated. . . . [¶] The order passing upon and determining the motion must be made and entered as provided in Section 660[2] and if the motion is granted

---

[1]"The specifications of some of the reasons are that the defendant was clearly negligent. He did violate the pedestrian right of way in the crosswalk and the negligence was a proximate cause of the injury to the Plaintiff and she was injured. The Plaintiff herself, Aida LaManna, was not in any manner negligent. She did use ordinary care as she walked across the street, and there is no substantial evidence whatsoever that she was negligent. She did walk across seven lanes, and I believe there were seven— [interruption by defense counsel] Seventy-seven feet. She was about almost there, anyway, and there was no place of safety. She didn't dart. She didn't make any sudden movements. She was walking along minding her own business. She thought she was home, but when she was hit her conduct was normal. She did all that was expected of her. She did not walk into the car and she did not walk or blunder into the car, and that is the end of the order."

[2]Section 660 of the Code of Civil Procedure provides in part that the court's power to rule on a motion for new trial shall expire 60 days from and after the mailing of notice of

must state the ground or grounds relied upon by the court, and may contain the specification of reasons. *If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk.* The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons." (Italics added.)

■ The minute order of December 23, 1971, contains neither a statement of the ground upon which the new trial was granted nor a specification of the court's reasons in support of that ground. We reluctantly hold the former error to be cured by the fact that the motion for new trial was predicated solely on alleged insufficiency of the evidence; inasmuch as a new trial can be granted only on a ground specified in the motion, the order in the case at bar must be deemed to have been based on a finding of such insufficiency. (*Mercer* v. *Perez* (1968) 68 Cal.2d 104, 111 [65 Cal.Rptr. 315, 436 P.2d 315].) We reiterate, nevertheless, our warning in *Mercer (ibid.)* that in so holding "we are not to be construed as giving our approval to this or any other failure to comply unambiguously with the statutory mandate that 'the court shall specify the ground' on which the motion is granted."

No such process of reasoning, however, can cure the court's error in failing to timely specify its *reasons* for granting a new trial on this ground. The minute order of December 23, in the words of the statute, "does not contain such specification of reasons." In that event the statute explicitly directs that "the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk." ■ The only written specification of reasons in the case at bar was filed not 10 but 57 days after the order granting a new trial. As plaintiff properly concedes, that statement was an act in excess of jurisdiction and is therefore a nullity. We held in *Mercer* (68 Cal.2d at p. 121) "that the prescribed 10-day period is a statute of limitations on the authority of the court to act, and that after the expiration of the period the court has no power to add a specification of reasons by a *nunc pro tunc* order or otherwise." (*Treber* v. *Superior Court* (1968) 68 Cal.2d 128, 135 [65 Cal.Rptr. 330, 436 P.2d 330]; accord, *Swanson* v. *Western*

---

entry of judgment by the clerk or 60 days from and after service of written notice of entry of judgment, whichever is earlier, or if such notice has not been given, then 60 days after filing the first notice of intention to move for new trial. A motion not "determined" within the 60-day period is deemed denied, and a motion is not determined until an order ruling on the motion is either entered in the permanent minutes of the court, or signed by the judge and filed with the clerk.

*Greyhound Lines, Inc.* (1969) 268 Cal.App.2d 758, 760 [74 Cal.Rptr. 383]; *Brooks* v. *Harootunian* (1968) 261 Cal.App.2d 680, 683-685 [68 Cal.Rptr. 374].)[3]

Seeking to avoid the fatal impact of the foregoing rule, plaintiff first asks us to create a doctrine of "substantial compliance" with section 657. She contends that the oral statement of reasons given in open court on December 23, 1971, "substantially satisfied in a different way" the two-fold purpose of the 1965 amendments to section 657, i.e., to encourage careful deliberation by the trial court before ruling on a motion for new trial, and to make a record sufficiently precise to permit meaningful appellate review. (*Mercer* v. *Perez* (1968) *supra,* 68 Cal.2d 104, 113-115.) On the first point it is asserted that the completeness of the court's oral statement (fn. 1, *ante*) proves that the motion for new trial was not granted hastily or without due judicial consideration. On the second point plaintiff argues that adequate notice of the court's reasons for granting a new trial was given (1) to defendant by the fact that the oral statement was made in her presence and (2) to the appellate courts by the fact that it may be found in the transcript on appeal as part of the reported proceedings on the motion.

We have recently rejected a closely similar reliance on oral statements by the trial judge. In *Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51 [107 Cal.Rptr. 45, 507 P.2d 653], a wrongful death action, the jury rendered a verdict in favor of the plaintiffs. On the defendants' motion a new trial was granted on the ground the damages were excessive, but the minute order failed to specify the court's reasons for so ruling. After holding the written statement of reasons inadequate, we said (at pp. 62-63): "Defendants argue, however, that the new trial judge *did* comply with section 657 when, during oral argument upon the motions for new trial, he alluded to the reasons for which he found the award of damages excessive.[4] Even if these oral statements were . adequately specific

---

[3]In addition, the purported *nunc pro tunc* order was filed 102 days from the date of the mailing of the notice of entry of judgment (Nov. 18, 1971). As noted above (fn. 2), the court's power to rule on a motion for new trial expires 60 days after the date of that mailing. We have held that the 60-day period is jurisdictional and cannot be extended by the device of a *nunc pro tunc* order. (*Siegal* v. *Superior Court* (1968) 68 Cal.2d 97, 101-103 [65 Cal.Rptr. 311, 436 P.2d 311].)

[4]In a footnote at this point we quoted the reporter's transcription of the following oral statement of reasons by the trial judge: "We have a situation that is the death of a housewife with three children and a husband. We had very meager evidence with regard to an earning capacity based upon the obtaining of a temporary teacher's certificate, and the argument made that she could and would have been a school teacher and capable of earning—I think the assertion is $5,000 a year. I am inclined to the opinion that whether

reasons, there would be no merit to this contention. First, a careful reading of section 657 leaves no room for doubt that the reasons required to be specified by that section must be contained either in the order granting a new trial or in a separately prepared and signed statement in writing filed with the clerk within 10 days after the filing of the new order. (§ 657, 4th par.) If defendants' argument were accepted, it would defeat the objective, which we stressed in *Mercer*, of providing a precise record for appellate review since it would necessitate a close inspection of the record for any oral statement by the trial judge that could be construed as a reason for granting a new trial.

"In *Miller* v. *Los Angeles County Flood Control Dist.* [1973] 8 Cal.3d 689 [106 Cal.Rptr. 1, 505 P.2d 193], we reversed a new trial order based on the ground of insufficiency of the evidence because the trial judge failed to adequately specify his reasons for the order. Defendants there argued that adequate reasons for granting the new trial were contained elsewhere in the trial court's order, in a section dealing with the denial of defendant's motion for a judgment notwithstanding the verdict. We rejected that argument, since section 657 was intended to preclude guesswork over 'reasons' stated outside the order that could conceivably be read into a new trial order. (8 Cal.3d at p. 698, fn. 8.) Similarly, in this case we hold that section 657 contemplates a written specification of reasons that may be set forth in only two places—either in the order itself or in a separate document filed with the clerk. It is highly significant, we think, that in either event the mandate of the statute is that the specification of reasons be *in writing, signed* by the trial judge and *filed with the clerk.* In the case at bench, the oral statements made by the trial judge at the hearing of the motions clearly do not satisfy this requirement." (Italics in original.)

In *Stevens* it could have been said, as plaintiff now urges, that the oral statement of reasons showed the trial court had deliberated before granting the motion, and that notice of those reasons was given by the transcription of the oral statement into the record on appeal. Nevertheless we held the oral statement did not satisfy the requirements of section 657, and our opinion was unanimous.

It is contended that *Stevens* is factually distinguishable because in the case at bar the wording of the oral statement implies that it was

---

or not she would have earned anything like that in the future was highly conjectural, that the evidence would not sustain a finding to the effect that that was established with reasonable certainty."

embodied in a written order which the trial court read into the record at the time of ruling on the motion for new trial.[5] From this it is inferred that the requirement of section 657 that the specification of reasons be "prepared" by the court within the statutory period was satisfied, and it is urged that this is the sole jurisdictional requirement of the section.

The argument is untenable both in fact and in law. To begin with, there is no proof the trial court was actually reading from a previously "prepared" written order when it gave its oral statement; from the face of the record it is equally possible the court was simply making an extemporaneous oral order setting forth the reasons for its decision—surely a common method of ruling on a motion.[6]

In any event, the proposed distinction is legally irrelevant. Section 657 declares that the order which determines the motion for new trial "must be made and entered as provided in Section 660. . . ." Section 660 provides in relevant part that "A motion for a new trial is not determined within the meaning of this section until an order ruling on the motion (1) is *entered* in the permanent minutes of the court or (2) is *signed* by the judge and *filed* with the clerk." (Italics added.) Manifestly, an order required to be either "entered" or "signed" and "filed" must be in writing; it is physically impossible to do any of these things to an order orally delivered, whether from a written draft or extemporaneously.

To rely in this connection on the word "prepare" in section 657 is to distort the statute in several respects. First, that word is part of a provision of the section which operates only when the order granting the new trial *does not itself contain the specification of reasons,* in which case the court has an additional 10 days in which to act. Here plaintiff expressly disavows reliance on the latter provision. ■ Second, the word "prepare" as used in section 657 does not have the meaning now claimed. It was inserted by the Legislature simply to indicate that it is the duty of the court rather than counsel to draft the requisite specification of

---

[5] Particular emphasis is placed on the fact that the court began by saying, "The specifications of some of the reasons are . . ." and concluded with the words, "and that is the end of the order." (See fn. 1, *ante.*)

[6] Much of the statement is in the informal style of the spoken rather than the written word, e.g., "She did walk across seven lanes, and I believe there were seven . . . Seventy-seven feet. She was about almost there, anyway, and there was no place of safety. . . . She was walking along minding her own business." Also significant are several obvious repetitions, e.g., the plaintiff "was not in any manner negligent. . . . [A]nd there is no substantial evidence whatsoever that she was negligent. . . . She did not walk into the car and she did not walk or blunder into the car. . . ." This is not the language of a "prepared" written order.

reasons.[7] Third, even if the word "prepare" were relevant here, there is no basis for concluding that it represents the sole jurisdictional requirement of the statute. ■ In adopting section 657 the Legislature has expressly directed that the court "prepare," "sign," and "file" the written specification of reasons. It is not for us to decide that only the first of these three judicial acts really matters.[8] On the contrary, in *Stevens* (9 Cal.3d at p. 63) we found it "highly significant" that "the mandate of the statute is that the specification of reasons be in *writing, signed* by the trial judge and *filed with the clerk.*" (Italics in original.) Each of these statutory requirements, accordingly, is mandatory and jurisdictional.

The decisions relied on by plaintiff do not compel a different conclusion. In *Herman* v. *Shandor* (1970) 8 Cal.App.3d 476 [87 Cal.Rptr. 443], the trial judge expressly adopted, as his specification of reasons for granting a new trial, a detailed *written* statement of reasons which he had filed earlier in response to a premature oral motion for new trial in the same case, and the parties expressly agreed in open court that it was unnecessary for the judge to file still another written specification of reasons. In *Desherow* v. *Rhodes* (1969) 1 Cal.App.3d 733 [82 Cal.Rptr. 138], on the 60th day following notice of entry of judgment the judge granted a new trial and personally drafted *in writing* the exact wording of his order, delivering it to his clerk with instructions to enter the order that same day in the permanent minutes; after being typed and approved, the order was entered in the register of actions and delivered to the calendar clerk, but the latter failed to place his file stamp thereon until two days later. In both cases, it is true, the Court of Appeal held there was "substantial compliance" with section 657. But in neither did the trial court fail, as here, to comply with the explicit requirement of the section that the specification of reasons be "in writing." As the cited cases are thus distinguishable on their facts, we need not determine at this time whether they were correctly decided. ■ For present

---

[7]This is further emphasized by the succeeding sentence of section 657: "The court shall not direct the attorney for a party to *prepare* either or both said order and said specification of reasons." (Italics added.) As we explained in *Mercer* (68 Cal.2d at p. 113), this prohibition advances the Legislature's objective of promoting judicial deliberation before judicial action.

[8]" 'The argument, in effect, seeks, under the guise of judicial construction, the elimination, as unnecessary, of an express requirement of the section. But a court is prohibited from such a construction as will omit a portion of a statute. (Code Civ. Proc., sec. 1858.) The power of the legislature [in] specifying procedural steps for new trials is exclusive and unlimited. [Citations.] The wisdom of or necessity for certain requirements are matters for legislative and not judicial consideration and the judiciary, in its interpretation of legislative enactments may not usurp the legislative function by substituting its own ideas for those expressed by the legislature.' " (Fn. omitted.) (*Mercer* v. *Perez* (1968) *supra*, 68 Cal.2d 104, 117-118, quoting from *Smith* v. *Ibos* (1937) 22 Cal.App.2d 551, 554 [71 P.2d 847].)

purposes we observe only that an oral recital, no matter how thoroughly it may have been prepared, cannot amount to compliance in any degree, "substantial" or otherwise, with a statutory directive that such a statement be in writing.

Some confusion appears to have arisen from our caveat in *Mercer* (68 Cal.2d at p. 115) that the 1965 amendments to section 657 "should be given a reasonable and practical construction." We meant, as the ensuing discussion in *Mercer* should have made clear, that in deciding on the *content* of the specification of reasons the trial judge need not incorporate verbatim transcriptions of the testimony or lengthy summaries of the evidence; rather, it will be sufficient if he furnishes "a concise but clear statement of the reasons why he finds one or more of the grounds of the motion to be applicable to the case before him. No hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case." *(Ibid.)* We did not mean, however, that there is any room for such "construction" of the detailed statutory requirements of the *form* of the specification of reasons. On that point our position was categorical: noting the needless administrative burden that would arise from litigating and relitigating such questions of form, we declared (at p. 124) that "The only solution is to insist, as we do, upon *full and timely* compliance with this remedial legislation." (Italics added.) ▮▮▮▮▮ We reaffirm that position today.[9]

Plaintiff next contends the order granting a new trial should be sustained because she "voluntarily made a timely and reasonable attempt to procure procedural compliance by the trial court." As noted

---

[9]Deserving of only brief comment is plaintiff's claim that "no actual prejudice to Defendant appears" from the trial court's failure to file a timely written specification of reasons. No such showing has ever been demanded by this court, either in *Mercer* or any of its progeny. (See, e.g., *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 864]; *Miller* v. *Los Angeles County Flood Control Dist.* (1973) *supra,* 8 Cal.3d 689; *Stevens* v. *Parke, Davis & Co.* (1973) *supra,* 9 Cal.3d 51.) To require the appellant in such a case to prove not only that the trial court violated section 657 but also that such violation caused him particular and identifiable prejudice would obviously frustrate the salutary purposes of this legislation. In section 657 the Legislature has said to the trial courts, "You must follow certain specific steps in granting a motion for new trial"; it has not said, "You need not follow these steps unless your failure to do so would actually harm the litigant against whom the motion is granted." As noted above, the requirement that the specification of reasons be filed within 10 days of the order granting the new trial is in essence a statute of limitations. (*Mercer* v. *Perez* (1968) *supra,* 68 Cal.2d 104, 121.) Surely it will not be contended that failure to comply with a statute of limitations may be excused on the ground of lack of prejudice. (See, e.g., *Swanson* v. *Western Greyhound Lines, Inc.* (1969) *supra,* 268 Cal.App.2d 758 [specification of reasons filed four days late, order granting new trial reversed]; *Brooks* v. *Harootunian* (1968) *supra,* 261 Cal.App.2d 680 [same, specification filed five days late].)

above, the motion was orally granted on December 23, 1971. On December 27, 1971, plaintiff served and filed a memorandum requesting the court to "make and file an amplified statement of the factual grounds on which it finds the evidence insufficient to sustain the jury's implied finding of contributory negligence on the part of the plaintiff." In the memorandum plaintiff advised the court—contrary to her position here—that under our decisions "the requirements of Section 657 are to be strictly enforced." Submitted with the memorandum was a three-page specification of reasons prepared by plaintiff, which she asked the court to consider or adopt in whole or in part. The court took no action in response to this request.

As noted above, section 657 declares in part that "The court shall not direct the attorney for a party to prepare either or both said order or said specification of reasons." In *Mercer* (68 Cal.2d at pp. 123-124, fn. 8) we admonished that we will not "countenance any practice designed to circumvent the new statutory prohibition against preparation of the specification of grounds or reasons by the attorney for the moving party. But this does not mean that the attorney, in the discharge of his professional responsibilities, may not assist the court by calling its attention within the 10-day period to any such deficiency in the order, thereby enabling it to be corrected within the jurisdictional period." We did not go on to say what would happen if the court, being thus reminded, nevertheless failed to correct the deficiency in time. Plaintiff infers from our silence on this point that we do not "regard the ten-day rule as sacrosanct," and that the effect of a litigant's efforts to cure such noncompliance will be determined on a case-by-case basis.

This is an unwarranted deduction. ■ In view of the plain statutory directive that "the court" shall specify the reasons for granting a new trial, the fatal omission of such a specification cannot be filled by any act of counsel or party. In her petition for hearing plaintiff candidly conceded the justification for this rule: "if this court holds that under some circumstances a diligent litigant will be treated as if his efforts to procure compliance had succeeded, might not such a holding open the door to a new wave of difficult appellate litigation, and might not such a holding also amount to an indirect way of shifting the burden of compliance from the trial courts back to the litigants? [¶] Petitioner acknowledges that some disadvantages and potential embarrassments to the sound and efficient administration of justice are implicit in such a holding." We decline to thus "open the door" to old abuses which section 657 was enacted to foreclose. As we explained in *Mercer* (68 Cal.2d at p. 124), "Neither the public, nor the bar, nor the courts should

be subjected to such a burden. Just as society has a strong interest in avoiding needless retrials, so it has an equal concern to prevent repetitious proceedings in the trial court and multiple appeals from the same order." The final responsibility for compliance with section 657 remains where the Legislature has deliberately placed it, on the trial judge.

■ The new trial order in this case was based, as we have seen, on the sole ground of insufficiency of the evidence. In that event section 657 provides that "it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, . . ." Inasmuch as no reasons whatever were timely specified in the case at bar, the order cannot be sustained on this ground and must therefore be reversed. Accordingly, the judgment will be automatically reinstated. (*Stevens* v. *Parke, Davis & Co.* (1973) *supra,* 9 Cal.3d 51, 63, and cases cited.)

### Plaintiff's Cross-Appeal From the Judgment

Turning to the merits of the cross-appeal, we hold the evidence is insufficient to support the judgment. The case is controlled by *Schmitt* v. *Henderson* (1969) 1 Cal.3d 460 [82 Cal.Rptr. 502, 462 P.2d 30], *Novak* v. *Dewar* (1961) 55 Cal.2d 749 [13 Cal.Rptr. 101, 361 P.2d 709], and *Gray* v. *Brinkerhoff* (1953) 41 Cal.2d 180 [258 P.2d 834]. In each of those cases, as here, the plaintiff pedestrian attempted to cross a street at an intersection, lawfully proceeding within a marked crosswalk; the defendant drove his vehicle into the crosswalk and struck the plaintiff; and the defendant testified he did not see the plaintiff until the moment of, or immediately before, the impact.[10] In each case the jury returned a verdict for the defendant, but we reversed the ensuing judgment. We recognized that negligence and contributory negligence ordinarily present questions of mixed fact and law "and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented" (*Gray,* at p. 183 of 41 Cal.2d; *Novak,* at p. 752 of 55 Cal.2d; *Schmitt,* at p. 463 of 1 Cal.3d); on the record before us, we concluded in each case that as a matter of law the defendant was guilty of negligence and the evidence was insufficient to support a finding that the plaintiff was contributorily negligent.

The record in this case impels us to the same conclusion. The accident

---

[10]In each the plaintiff was crossing with a green light and the defendant was turning left across the plaintiff's path. These circumstances are not present here; but their absence, as will appear, does not render the decisions distinguishable.

occurred at the intersection of Foothill Boulevard and Mountair Avenue in Los Angeles. Foothill runs generally east and west, and Mountair generally north and south. Foothill is 74 feet wide, consisting of 2 traffic lanes in each direction and a left-turn lane in the center. It is traversed by pedestrian crosswalks 15 feet wide, marked by white lines on the pavement. There are no traffic lights, but stop signs on Mountair require traffic on that street to come to a halt before entering Foothill from either direction.

The events took place at 6 p.m. on a January evening. Plaintiff, a widow, was returning home from a shopping trip by bus. She got off the bus at the northeast corner of the intersection, intending to cross Foothill to the southeast corner and proceed to her home. She allowed the bus to depart and waited for two oncoming cars to pass westbound on Foothill. Instead, the driver of each came to a stop and waved her across. Walking in the middle of the crosswalk, she looked both ways and proceeded to the center lane. There she halted when she observed a car approaching from the other direction, but it pulled into the left-turn lane and stopped at the intersection. Plaintiff continued across the eastbound lanes, looking to the right—the direction from which any traffic would come—while she walked. As she entered the last lane she suddenly saw the headlights of a car about to hit her, traveling east. She testified, "He was on top of me and I was petrified. . . . I don't know where he came from." The car struck her at a point estimated by the police to be 12 feet from the curb and 9 feet into the crosswalk, inflicting serious injuries.

Defendant testified he was driving east on Foothill towards Mountair, in the lane next to the curb, at 30 to 35 miles per hour. When he reached Mountair he took his eyes off the road and looked to the right, observing a car approaching the intersection from the south. He drove through the intersection while watching that car to make sure it halted at the stop sign, and did not look ahead again until his wife, a passenger in the front seat, screamed "Honey, there's a woman!" He slammed on the brakes, leaving skidmarks 35 feet long, but his left front fender nevertheless struck plaintiff and knocked her down. He did not see plaintiff until the moment of impact, when he had "just a glimpse" of her. He conceded that he knew the intersection well, that he had not looked to see if anyone was in the crosswalk, and that plaintiff was in the crosswalk when he struck her.

Here, as in *Schmitt, Novak,* and *Gray* "Defendant's own testimony shows indubitably that he was guilty of negligence proximately causing plaintiff's injuries. By the provisions of section [21950], subdivision (a),

of the Vehicle Code, 'The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk. . . .' It is undisputed that defendant did not yield the right of way to plaintiff. Such failure constitutes a violation of the statute and negligence as a matter of law in the absence of reasonable explanation for defendant's conduct. [Citations.]" (Gray, at p. 184 of 41 Cal.2d; Novak, at p. 752 of 55 Cal.2d; Schmitt, at p. 463 of 1 Cal.3d.)

██ Defendant's attempts to excuse his conduct are inadequate. He testified that he kept his eyes on the car allegedly approaching from the south because it had not yet stopped and he was concerned it might run the stop sign. But at the same time he continued to drive blindly through the intersection, knowing there was a pedestrian crosswalk directly ahead. While a driver should be alert to other cars approaching stop signs on intersecting streets, he should also reasonably assume their drivers will heed the directive of such signs. It is obviously impermissible for him to concentrate his attention wholly on the potential risk of being struck by the occasional vehicle whose driver fails to see or obey a stop sign, while ignoring the far greater peril that his own car will run down an unobserved pedestrian or vehicle directly in his path. As we said in rejecting a similar excuse in Gray (at p. 184 of 41 Cal.2d), "For a driver to cause or allow his vehicle to continue into and across such a crosswalk while his attention is so 'diverted' constitutes in itself a violation of the statute for which he must be held responsible." In the case at bar defendant's negligence is therefore established as a matter of law.[11]

The evidence is also insufficient to support a finding of contributory negligence. ██ "The burden of proving that the plaintiff was negligent and that such negligence was a proximate cause of the accident is on the defendant." (Gyerman v. United States Lines Co. (1972) 7 Cal.3d 488, 501 [102 Cal.Rptr. 795, 498 P.2d 1043].) Here defendant could not personally testify to plaintiff's conduct prior to the accident; because he was looking elsewhere, he did not see her until the moment of impact. He sought to fill that lacuna in his case by putting his wife on the stand, who claimed on direct examination that she had observed plaintiff's

[11]On direct examination plaintiff testified she was wearing a dark coat and white shoes at the time of the accident. In Smith v. Sugich Co. (1960) 179 Cal.App.2d 299, 307 [3 Cal.Rptr. 718], the fact the victim of a nighttime collision was wearing dark clothes was noted as excusing the driver's failure to yield the right of way at a crosswalk. But in Smith other circumstances not here present also contributed to that conclusion, such as the fact the pedestrian was running across the intersection and may actually have run into the defendant's vehicle. In any event, here the color of plaintiff's coat was immaterial because defendant was not even looking in her direction as he drove through the intersection.

manner of walking across Foothill Boulevard. ▮ When asked by defense counsel whether plaintiff did "at anytime from the time you first observed her up to the time of the accident stop or slow down?" she replied in the negative. She then described plaintiff as walking "with her head down and just kind of humped over looking right down at the street, never looking right or left."

On cross-examination, however, a different picture emerged. Defendant's wife admitted she had in fact seen plaintiff for only "a split second" before the impact. When counsel challenged her opportunity in such circumstances to make the observations just quoted, she conceded after much hesitation, "I—I—I—I observed one tiny speck of something that caught the light of the car." Such testimony is wholly inadequate to negate plaintiff's direct and repeated statements that she looked in the direction of oncoming traffic before and during her crossing of the intersection, and did not proceed until it appeared safe to do so.

Changing his position, defendant next accepts plaintiff's testimony that she was looking in his direction and argues that she therefore "must have seen" the headlights of his car in time to stop or take evasive action. ▮ But defendant's burden of proving contributory negligence "must be met by more than conjecture or speculation." (*Gyerman* v. *United States Lines Co.* (1972) *supra,* 7 Cal.3d 488, 503.) ▮ Plaintiff testified she did see defendant's headlights, but not until "it was too late to do anything." The most that can be inferred from this testimony is that plaintiff was not *continuously looking in the direction of potential oncoming traffic as she crossed the intersection.* ▮ But a pedestrian must evidently divide his attention between possible cross-traffic and hazards in the roadway ahead; he is under no duty to walk across a street without looking in front of him. As we said in *Schmitt* of an alleged duty of a pedestrian to watch over his shoulder for cars turning left into his path, "Common sense dictates that no such requirement should be imposed." (1 Cal.3d at p. 464.) Such a pedestrian "has, in effect, blinded himself to such far more common sources of danger as collision with vehicles . . . stopped partially within the crosswalk, and other pedestrians proceeding either in his direction or towards him from the opposite curb," and to defects or obstructions in the roadway. *(Ibid.)* "The person of ordinary prudence does not cross the streets in such a wilfully hazardous manner, and the law neither expects nor compels him to do so." *(Ibid.)*

▮ Plaintiff, in short, "was lawfully where pedestrians are expected to be found at intersections" (*Schmitt,* at p. 464 of 1 Cal.3d; *Novak,* at p.

752 of 55 Cal.2d; *Gray,* at p. 185 of 41 Cal.2d). She had no warning of the impending danger until it was too late; nothing occurred to place her on notice that defendant was about to violate the law designed for her protection. "It follows that plaintiff was entitled to believe [her] right of way would be respected, and was not negligent in acting on the basis of that belief." (*Schmitt,* at p. 466 of 1 Cal.3d.)

In view of our conclusion that the evidence is insufficient to support the judgment, it is unnecessary to reach plaintiff's contentions challenging certain instructions and other rulings.

The order granting a new trial is reversed. The judgment is reversed. Each side shall bear its own costs on appeal.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Burke, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.