[No. C051294. Third Dist. Mar. 15, 2007.]

CALIFORNIA ASSOCIATION FOR HEALTH SERVICES AT HOME et al., Plaintiffs and Appellants, v.
STATE DEPARTMENT OF HEALTH SERVICES et al., Defendants and Appellants.

COUNSEL

Foley & Lardner, Robert C. Leventhal, Jeffrey R. Bates and Gregory J. Hall for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Joseph O. Egan, Paul Reynaga, Julie Weng-Gutierrez, Margarita Altamirano, Theodore Garelis and Anthony V. Seferian, Deputy Attorneys General, for Defendants and Appellants.

OPINION

**BLEASE, J.**—Plaintiffs and appellants are a home health care provider, an association of home health care providers, and a disability rights advocacy group. They claim defendants, the State Department of Health Services and its director, Sandra Shewry (collectively, DHS), failed to comply with federal Medicaid and state Medi-Cal laws by refusing since 2000 to raise or to review Medi-Cal reimbursement rates paid to the providers of home health care services.

The trial court issued a writ of mandate requiring DHS to perform a review of reimbursement rates for the then current year (2005). The trial court denied plaintiffs' request for a writ to compel DHS to raise reimbursement rates for prior years. Plaintiffs appeal the trial court's denial of a writ to compel a review and an increase of rates for past years, and DHS cross-appeals the grant of the writ to compel a review of rates for 2005.

We shall conclude DHS was required to review reimbursement rates annually, but that plaintiffs have failed to show DHS was obligated to set new rates. We shall also conclude that the trial court erred in not extending its mandate to prior years.

## FACTUAL AND PROCEDURAL BACKGROUND

██ The Medicaid Act (42 U.S.C. §§ 1396a–1396v) authorizes federal grants to states for medical assistance to certain low income persons. (*Orthopaedic Hosp. v. Belshe* (9th Cir. 1997) 103 F.3d 1491, 1493 (*Orthopaedic*).) The program is funded by both the federal and state governments, and administered by the states. (*Ibid.*; 42 C.F.R. § 430.0 (2005).) To receive matching federal funding, states must agree to comply with the applicable Medicaid law. (*Orthopaedic, supra*, at p. 1493.) The state program in California is called Medi-Cal.

Within broad federal rules, the states determine the payment levels for services, and make payment for services directly to the individuals or entities furnishing the services. (*Orthopaedic, supra,* 103 F.3d at p. 1493; 42 C.F.R. § 430.0 (2005).) The Medicaid Act requires each participating state to adopt a state plan describing the policy and methods to be used to set payment rates. (*Orthopaedic, supra,* 103 F.3d at p. 1494; 42 C.F.R. § 447.201(b) (2005).) Federal regulations describe the state plan as a "comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of title XIX, the regulations in this Chapter IV, and other applicable official issuances of the Department. The State plan contains all information necessary for CMS [Centers for Medicare & Medicaid Services] to determine whether the plan can be approved to serve as a basis for Federal financial participation (FFP) in the State program." (42 C.F.R. § 430.10 (2005).)

■ Under the Medicaid Act, each state plan must, "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . ." (42 U.S.C. § 1396a(a)(30)(A) (section 1396a(a)(30)(A)).)

DHS is the agency that administers California's state plan. (Welf. & Inst. Code, §§ 14062, 14100.1; Cal. Code Regs., tit. 22, § 50004.) California's state plan provides that the methodology for establishing payment rates is to develop an evidentiary base or rate study resulting in the determination of a proposed rate, to present the proposed rate at a public hearing to gather public input, to determine the payment rate based on both the evidentiary base and the public input, and to establish the payment rate through the adoption of regulations.[1] The regulations specify that the "Department shall administer the Medi-Cal program in accordance with . . . [t]he State Plan under Title XIX of the Social Security Act." (Tit. 22, § 50004, subd. (b)(1).) Provider rates may also be adjusted when required by state statute, provided the requirements of federal law are met.

---

[1] The regulation setting forth the rates for home health agency services is California Code of Regulations, title 22, section 51523.

Additionally, with regard to home health agency services, the services at issue in this litigation, the state plan contained the following language as of the date this action was filed:

"The State Agency shall perform an annual review of the Medi-Cal reimbursement rates paid to providers of home health agency services. The purpose of such review is to ensure that the rates comply with federal regulation 42 U.S.C. Section 1396a (a)(30)(A), which requires payments to be:

"1) consistent with efficiency, economy, and quality of care; and

"2) sufficient to enlist enough providers so that care and services are available at least to the extent that such care and services are available to the general population in the geographic area."[2]

Despite this plan provision, DHS has not performed a review of the applicable reimbursement rates since 2000.

DHS adjusted the reimbursement rates at issue, those for home health care providers, in 1994, 1995, and 2000. The increases for these years were 6 percent in 1994, less than 1 percent in 1995, and 10 percent in 2000. DHS attempted to reduce rates by 5 percent for 2004, but the reduction was enjoined as a result of federal litigation. (*Clayworth v. Bonta* (E.D.Cal. 2003) 295 F.Supp.2d 1110.) The Governor proposed a 10 percent reduction in 2005, but the Legislature did not implement this proposal.

Plaintiffs filed a complaint and petition for mandamus relief alleging violation of federal law and the California state plan. They sought a writ of mandate ordering DHS to reimburse plaintiffs' members for the difference between the rates paid and the providers' usual charges.[3] In the alternative, they sought to force DHS to review its reimbursement rates, determine whether the rates complied with federal and state law, and reimburse plaintiffs for any shortfall. Plaintiffs also sought a writ of mandate ordering DHS to set current and future rates in compliance with state and federal law.

---

[2] The effective date of this plan provision was December 31, 1994. DHS has requested that we take judicial notice of the official acts of the State of California in amending its state plan to delete the requirement of annual review of rates, and the action of the federal Department of Health and Human Services approving the amendment. The amendment was effective as of December 31, 2005. Plaintiffs do not oppose, and the request is granted. We also take judicial notice of the California Regulatory Notice Register related to the amendment, as requested by plaintiffs.

[3] California's state plan provides that it is state policy to set reimbursement rates at the lesser of: (1) usual charges, or (2) the limits specified by state regulation.

The trial court found DHS subject to a mandatory duty to perform an annual review of the Medi-Cal reimbursement rates pursuant to the state plan, and issued a writ of mandate ordering DHS to perform a review as required by the state plan for 2005 and annually thereafter as long as required by the state plan or other applicable law. The trial court denied plaintiffs' request for an order requiring DHS to perform retrospective rate reviews and to reimburse the providers for any difference, finding plaintiffs did not demonstrate that they were entitled to any such relief.

Specifically, the trial court's tentative ruling stated that plaintiffs' evidence, consisting of "generalized cost data showing that the cost of providing home health care services in California has increased more than the rates paid by the state" was suggestive of the inadequacy of current rates. However, the trial court concluded that such evidence did not "demonstrate that on an overall basis rates violate federal and state law by being inconsistent with efficiency, economy and quality of care or [by being] insufficient to enlist enough providers to ensure that care and services are available at least to the extent they are available to the general population."

Plaintiffs appeal the trial court judgment insofar as it failed to order retrospective rate reviews and reimbursement. DHS cross-appeals the judgment insofar as it ordered DHS to perform a rate review beginning in 2005.

## DISCUSSION

### I

### Mootness

DHS claims the appeal is moot because the provision of the state plan providing the basis for the relief granted by the trial court is now nonexistent. Plaintiffs' appeal challenges the trial court's refusal to order rate increases for 2001 through 2004. The state plan provision repealing the annual rate review provision became effective as of December 31, 2005. Because the repealed provision had no effect on the earlier years, the appeal of the order denying rate increases for prior years is not moot.

## II

### Standing and Private Right of Action

■ DHS argues the trial court erred in granting plaintiffs any relief because the requirements for issuance of a writ were not met. There are two essential requirements to the issuance of a traditional writ of mandate: (1) a clear, present and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the performance of that duty. (*Loder v. Municipal Court* (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624].) We address the second requirement first. Under this part, we shall consider DHS's arguments that plaintiffs are not entitled to relief because there is no private right of action for DHS's failure to comply with the state plan or with federal law.

DHS argues the state plan creates no private right of action, citing *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] and *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 124–127 [62 Cal.Rptr.2d 620]. These cases held that certain regulatory statutes did not provide a private right of action for damages.

In *Moradi-Shalal* the court overruled *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], which held that a third party had a private right of action, pursuant to the Insurance Code, for damages against an insurer that committed unfair practices in violation of the code. However, the *Moradi-Shalal* court did not rule out civil damages and other remedies against insurers in appropriate common law actions (*Moradi-Shalal v. Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 304), nor did it preclude actions against the Insurance Commissioner to compel him or her to enforce the provisions of the Insurance Code.

In *Crusader Ins. Co. v. Scottsdale Ins. Co.*, the plaintiff, an insurer admitted to conduct business in California, sued nonadmitted insurers and surplus line brokers who had placed business with nonadmitted insurers. (*Crusader Ins. Co. v. Scottsdale Ins. Co., supra,* 54 Cal.App.4th at p. 124.) At issue was Insurance Code section 1763, which required surplus line brokers to conduct a diligent search for an admitted insurer who would accept a risk before placing the risk with a nonadmitted insurer. (54 Cal.App.4th at p. 124.) The plaintiff sought monetary damages for the defendants' violation of

Insurance Code section 1763, but the court held that there was no private right of action because there was no indication in the language of the statute that the Legislature intended to create a private right of action for violation of the statute. (54 Cal.App.4th at pp. 125, 136.)

■ However, the fact that the state plan creates no explicit private right of action for damages does not mean that the state plan cannot be the basis for the issuance of a writ of mandate to compel DHS to act pursuant to law. This was implicitly recognized in *Crusader Ins. Co. v. Scottsdale Ins. Co., supra,* 54 Cal.App.4th at pages 137–138, where the court noted that the plaintiff contended the Department of Insurance was not adequately performing its regulatory duties as prescribed by the Legislature. Yet, the court stated, the plaintiff did not seek a writ of mandate directing the department to perform its duty. (*Ibid.*) It only was in the absence of such a writ petition that the court held a regulatory statute did not provide a private right of action for damages.

Mandamus is not an action for damages because it is an equitable, not a legal remedy. (*Clough v. Baber* (1940) 38 Cal.App.2d 50, 53 [100 P.2d 519].) An action in ordinary mandamus is proper where, as here, the claim is that an agency has failed to act as required by law. (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 752 [125 Cal.Rptr.2d 788].)

In a similar argument, DHS claims plaintiffs have no implied right of action to enforce federal law because they could not enforce such provisions under title 42 United States Code section 1983 (section 1983). In particular, DHS cites *Sanchez v. Johnson* (9th Cir. 2005) 416 F.3d 1051, in which the Ninth Circuit recently held section 1396a(a)(30)(A) allows neither Medicaid recipients nor providers a private right of action enforceable under section 1983.[4]

This case differs from the federal cases denying a private right of action under section 1983 in two important respects. First, plaintiffs' suit is not based on a violation of federal law.[5] Section 1983 provides a remedy for violations of federal statutes and the Constitution. (*California Homeless & Housing Coalition v. Anderson, supra,* 31 Cal.App.4th at p. 458.) Although federal law requires that certain provisions be included in the state plan, the violation of the terms of the state plan, a state law, itself gives plaintiffs standing.

---

[4] We grant DHS's request that we take judicial notice of the subsequent history of *Sanchez v. Johnson, supra,* 416 F.3d 1051, denying rehearing.

[5] However, a writ of mandate is an appropriate method for enforcing a violation of federal law, even where the law creates no private right of action enforceable under section 1983. (*California Homeless & Housing Coalition v. Anderson* (1995) 31 Cal.App.4th 450, 455, 457 [37 Cal.Rptr.2d 639].)

DHS argues the state plan is a contractual agreement between California and the federal government, but does not have the force of law. A writ of mandate will issue only to compel the performance of an act specially enjoined by law. (*Wallace v. Board of Education* (1944) 63 Cal.App.2d 611, 616 [147 P.2d 8]; Code Civ. Proc. § 1085, subd. (a).)

Federal regulations define the state plan as "a comprehensive written statement submitted by the agency [DHS] describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of title XIX, the regulations in this Chapter IV, and other applicable official issuances of the Department. The State plan contains all information necessary for CMS to determine whether the plan can be approved to serve as a basis for Federal financial participation (FFP) in the State program." (42 C.F.R. § 430.10 (2005).) Other than this, the parties provide no other authority as to the legal nature of the state plan. In any event, whether the state plan is in the nature of a contract or a law, DHS is required by regulation to follow it. (Cal. Code Regs., tit. 22, § 50004, subd. (b)(1).) Thus, if DHS violates the terms of the state plan, it has violated state law as embodied in a regulation.

■ Second, plaintiffs have sued for a traditional writ of mandate under Code of Civil Procedure section 1085. The absence of a privately enforceable right under section 1983 does not render mandamus relief under Code of Civil Procedure section 1085 unavailable. (*California Homeless & Housing Coalition v. Anderson, supra*, 31 Cal.App.4th at p. 458.) The nature of the remedy afforded by section 1983 is more limited than the broader remedy available under Code of Civil Procedure section 1085. (*California Homeless & Housing Coalition*, at p. 458.) Unlike section 1983, which requires the violation of a private right, privilege, or immunity to confer standing, Code of Civil Procedure section 1085 confers a broad right to issuance of a traditional writ to those who are beneficially interested within the meaning of Code of Civil Procedure section 1086. (*Doctor's Medical Laboratory, Inc. v. Connell* (1999) 69 Cal.App.4th 891, 896 [81 Cal.Rptr.2d 829]; *Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1182 [42 Cal.Rptr.3d 191].)

A beneficial interest means the petitioner has a special interest over and above the interest of the public at large. (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 829 [39 Cal.Rptr.3d 189].) This standard "is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of

a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." ' [Citation.]" (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362 [87 Cal.Rptr.2d 654, 981 P.2d 499].)

Plaintiffs are an association of home health care providers, a home health care provider, and a disability rights advocacy group. To establish associational standing, plaintiffs must demonstrate that their members would have standing to sue in their own right. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com., supra,* 21 Cal.4th at p. 361.) The recipients of Medi-Cal services certainly have a special interest over and above the public at large in ensuring that DHS carry out its obligations to Medi-Cal's recipients and that payment rates are "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . ." (§ 1396a(a)(30)(A); see *Frank v. Kizer* (1989) 213 Cal.App.3d 919, 922, fn. 2 [261 Cal.Rptr. 882] [Medi-Cal recipients have standing to pursue mandamus action to compel DHS to comply with controlling federal regulations].) Likewise, the providers have a direct monetary interest in ensuring that they are paid for their services. Accordingly, plaintiffs have standing to contest the adequacy of the rates paid by DHS.

We conclude that plaintiffs have standing to enforce DHS's duties under the state plan by mandamus to the extent such duties are clearly and presently compelled by the state plan and do not involve an exercise of discretion. (*Larson v. City of Redondo Beach* (1972) 27 Cal.App.3d 332, 336 [103 Cal.Rptr. 592].) This brings us to exactly what acts plaintiffs seek to compel.

## III

### Duty to Review Rates

Plaintiffs claim they are not asking this court to set specific rates, but to compel DHS either to conduct annual rate reviews and adjust the rates in accordance with the results of the review, or to retroactively pay providers the difference between their usual charges and the rates paid.

To warrant relief by writ of mandate, a petitioner must demonstrate that the public entity had a ministerial duty to perform. (*US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 138 [111 Cal.Rptr.2d 689].) A minis-

terial duty is one that the entity is required to perform in a prescribed manner without any exercise of judgment or opinion concerning the propriety of the act. (*Ibid.*)

In this case the state plan prescribed a ministerial duty to perform an annual review of the reimbursement rates "to ensure that the rates comply with federal regulation . . . ." Although the state plan describes the methodology DHS must use in establishing reimbursement rates, it describes no methodology for performing the annual review, and prescribes no consequence or penalty for failure to perform the review.

## IV

## Duty to Change Rates

■ It is implicit in the purpose of the annual review "to ensure that the rates comply with federal regulation," that if the annual review shows the rates are in violation of the federal regulation the state shall establish new reimbursement rates through the methodology specified in the state plan.

However, that is a duty the state first must carry out through the mechanism of an annual review. Although plaintiffs may compel the state to carry out its duty to annually determine whether the existing rate structure is "consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area" (§ 1396a(a)(30)(A)), it is not a function of the writ of mandamus in this setting to compel the setting of rates, regardless of plaintiffs' showing of inadequacy. It is only when the state has performed that function that a challenge to any determination by the state may be made.

## V

## Retroactive Relief

As for DHS's obligation to annually review rates, the trial court ruled that plaintiffs were entitled to prospective relief and denied retrospective relief. With this much we disagree.

It is true that an applicant for a writ of mandate must show a present duty for the performance of the act sought to be compelled. (*Treber v. Superior Court* (1968) 68 Cal.2d 128, 134 [65 Cal.Rptr. 330, 436 P.2d 330].) "[M]andate does not lie when the respondent no longer has the legal authority to discharge the alleged duty because the time for doing so, as specified by statute or ordinance, has expired." (*Ibid.*)

In *Treber* the plaintiff in a damage action sought a writ of mandate to compel the court to set aside an order granting a new trial for failure to state reasons as required by Code of Civil Procedure section 657. The Supreme Court denied relief in mandate on the ground the "respondent court no longer has the power to perform the act . . . sought to be compelled" for the reason that the period for performance "prescribed [in section 657] is a statute of limitations on the authority of the court to act . . . ." (*Treber v. Superior Court, supra*, 68 Cal.2d at pp. 134–135; see also *La Manna v. Stewart* (1975) 13 Cal.3d 413, 418 [118 Cal.Rptr. 761, 530 P.2d 1073] [period for filing statement of reasons acts as statute of limitations].)

*Treber* cited three cases in support of its claims. In *City of Los Angeles v. Offner* (1941) 18 Cal.2d 859 [118 P.2d 1], the petitioner sought to compel the secretary of the board of public works to publish a notice inviting bids for a public contract. The court held that mandamus did not lie because a resolution of the board required that the bids be received by a time preceding the writ. Similarly, in *Rice v. McClellan* (1927) 202 Cal. 650, 654 [262 P. 1092], and *Sinclair v. Jordan* (1920) 183 Cal. 486 [191 P. 910], the date had expired to levy a special tax and to place the name of a candidate for public office, respectively.

In each of these cases the law denied the public entity the authority to act once the deadline for performance had passed. In this case there is no such prohibition. The requirement of an annual review does not function as a statute of limitations and there is no other legal authority that precludes the state from retroactively repairing its defalcation. (See *California Assn. of Nursing Homes etc., Inc. v. Williams* (1970) 4 Cal.App.3d 800, 818 [85 Cal.Rptr. 735].)

## DISPOSITION

The judgment is affirmed in part and reversed in part. The trial court is directed to issue a writ of mandate compelling the department to conduct an annual review of the Medi-Cal reimbursement rates paid to the providers of home health care services for the years 2001 through 2005.

Costs on appeal are awarded to plaintiffs. (Cal. Rules of Court, rule 8.276(a)(4).)

Scotland, P. J., and Morrison, J., concurred.