[Civ. No. 28426. Fourth Dist., Div. One. May 1, 1984.]

FELIX PEDRO CHAVEZ, Plaintiff and Respondent, v.
ZAPATA OCEAN RESOURCES, INC., Defendant and Appellant.

COUNSEL

Gray, Cary, Ames & Frye, William N. Kammer and Janet E. Sobel for Defendant and Appellant.

Carlos R. Carriedo for Plaintiff and Respondent.

## OPINION

**BUTLER, J.**—Felix Pedro Chavez, a crewman on a tuna seiner, owned by Zapata Ocean Resources, Inc. (Zapata), was injured at sea when a tuna fell from a net being winched aboard the vessel and broke his left arm. The jury returned a verdict in his favor for $150,000. Zapata appeals claiming the court erred in permitting an unsigned deposition to be read to the jury, in keeping portions of Chavez' deposition from the jury, and the jury verdict was excessive.

### I

Rafael Lobo Benavides, a Costa Rican national, was deck boss on the seiner at the time of the accident. He was in port for a couple of days and his deposition was taken in San Diego on July 19, 1980. At the deposition, Chavez' lawyer who tried the case, Carlos Raul Carriedo, stipulated with Zapata's trial counsel, William N. Kammer, the deposition would be delivered to Carriedo, could be read and signed by Benavides before any notary public and would be returned to the reporter for filing.

Benavides lived in Costa Rica. The parties stipulated at trial he was unavailable as a witness (Code Civ. Proc.,[1] § 2016, subd. (d)(3)). Carriedo told the court he had not seen Benavides since taking the deposition. Benavides did not review or sign the deposition. Kammer's objection to reading Benavides' deposition to the jury for failure of Benavides to have reviewed and signed it was overruled by the court and the deposition was read to the jury.

### II

The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds the witness unavailable as a witness within the meaning of section 240 of the Evidence Code (§ 2016 subd. (d)(3)). As the parties stipulated to Benavides' unavailability, we look to the use of unsigned depositions.

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

Section 2019, subdivision (e)(1)[2] at times relevant here provides for the reading, correcting and signing of depositions. Unless the parties make other arrangements, the reporter writes the witness and the lawyers the original is available for reading, correcting and signing during the next 30 days. The witness by letter may indicate changes, approval or refusal to sign or appear at the reporter's office, all within the 30-day period. If neither of these events occur, the reporter so notes on the original which may then be used as if the witness had read, corrected and signed unless the court grants a motion to suppress the deposition in whole or in part. Here, counsel for the parties agreed on the record to another procedure for signing the original of the deposition. The procedure was not carried out. While the original of the deposition was delivered to Carriedo, Benavides did not review or sign the deposition. The original was not returned to the reporter for filing with the court.

## III

Before 1957, then applicable sections 2006 (repealed by Stats. 1957, ch. 1904, § 1), 2022 and 2032 (repealed by Stats. 1957, ch. 1904, § 3) mandated the review and signing of a deposition and, for failure so to do, the deposition was inadmissible. (*Voorheis* v. *Hawthorne-Michaels Co.* (1957) 151 Cal.App.2d 688, 694 [312 P.2d 51].) In 1957, extensive changes in deposition procedures were enacted by the Legislature (Stats. 1957, ch. 1904, § 3). At that time, section 2019, subdivision (e) was renumbered and amended to provide: ". . . The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill

---

[2]"*Unless the parties agree on the record to another procedure for reading, correcting, and signing the original of the deposition,* when the testimony is fully transcribed the officer shall notify the deponent and counsel in writing that the original of the deposition is available for reading, correcting and signing at the office of the officer, and shall remain so available during business hours of business days for a period of 30 calendar days following such notification. The examination and reading of the transcribed testimony may be waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition. The deponent may correct or approve or refuse to approve the deposition for a period of 30 days following the notification prescribed in this subdivision by means of a letter addressed and mailed or delivered to the transcribing officer indicating any changes to be made, approval, or refusal to approve the deposition. Such changes, approval, or refusal to approve the deposition, when made by letter, shall be equivalent to personal changes, approval, or refusal to approve the deposition.

"If the deponent fails to appear at the office of the officer or notify him by letter as provided in this subdivision within such 30-day period, or if the witness so appears or sends such letter but refuses to approve or sign the deposition, the officer shall indicate on the original the fact that the deponent failed to appear, or the fact that the deponent refused to sign together with any reason given therefor. Thereafter the deposition shall have the same force and effect as though it had been read, corrected and signed by the deponent, unless on a motion to suppress under subdivision (d) of Section 2021 of this code the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part." (Italics added.)

or cannot be found or refuses to sign. If the deposition is not signed by the witness, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor . . . ." Under these procedures, depositions not signed by the witness were signed by the reporter and the deposition was entitled to be used as fully as if signed by the witness unless on a motion to suppress the court should hold the reasons given for the nonsigning by the witness required rejection of the deposition in whole or part.

In 1976, section 2019, subdivision (e) was again amended to its present form (Stats. 1976, ch. 79, § 1). The effect of the 1976 amendment was to make the reason for a deponent's failure or refusal to sign a deposition immaterial except for purposes of a motion to suppress (13 Grossman & Van Alstyne, Cal. Practice, Discovery Practice (1981 pocket supp.) § 280). As enacted in 1976, section 2019, subdivision (e)(1) has remained substantially unchanged in the course of other amendments to that section (Stats. 1976, ch. 79, § 1; Stats. 1978, ch. 383, § 1; ch. 1384, § 1; Stats. 1979, ch. 19, § 1; Stats. 1980, ch. 677, § 1; Stats. 1982, ch. 192, § 1).

■ This brief review teaches before 1976 the review and signing (by the deponent or the reporter with appropriate explanation) of depositions was mandated by law. Since 1976, section 2019, subdivision (e) does not include a requirement the deposition be signed.[3] Absent an alternative procedure agreed to by the parties, the failure to review, correct, and sign or the refusal to sign, all within stated time periods, permits the use of an unsigned deposition unless the court on motion suppresses all or part of the deposition.

■ The stipulation that Benavides could sign the deposition before any notary is not the alternative procedure contemplated by section 2019, subdivision (e)(1). This is so because that alternative provides for a procedure ". . . for *reading, correcting* and signing" the deposition. (Italics added.) Here, the stipulation referred only to *signing* before a notary public. No provision was made for the reading, correcting or giving notice to the witness and Zapata's counsel the deposition was transcribed and available for examination. The stipulation did not anticipate Benavides' disappearance and resultant failure to review, correct or sign the deposition.

---

[3]Pre-1976 cases based on earlier law barring use of unsigned depositions are no longer authority for that proposition (*Voorheis* v. *Hawthorne-Michaels Co., supra,* 151 Cal.App.2d 688; *People* v. *Hjelm* (1964) 224 Cal.App.2d 649 [37 Cal.Rptr. 36] (dicta); *Reimel* v. *House* (1969) 268 Cal.App.2d 780 [74 Cal.Rptr. 345]; *Beverly Hills Oil Co.* v. *Beverly Hills Unified Sch. Dist.* (1968) 264 Cal.App.2d 603 [70 Cal.Rptr. 640]; *Western Concrete Structures Co.* v. *James I. Barnes Constr. Co.* (1962) 206 Cal.App.2d 1 [23 Cal.Rptr. 506].)

The stipulation of the parties posits the dilemma. On the one hand, their alternative procedure providing for signing before any notary public did not provide for notice or for the use of the deposition should Benavides fail to review, correct or sign it. On the other, they stipulated away section 2019, subdivision (e)(1) procedures allowing use of unsigned depositions in such circumstances.

We conclude the unsigned deposition was admissible. In effect, the procedure followed in the taking of the deposition, the hearing on its admissibility and the absence of objections to the questions and answers tracked the statutory requirements for admissibility. The failure to give any notice to Benavides is troublesome. At oral argument, Chavez' counsel advised local maritime practice anticipates unavailability of transient seamen witnesses and inability to mail notices to those wandering on the seven seas. In the circumstances presented, giving notice to Benavides was impossible. No prejudice resulted as counsel for the parties received the original or copies in due course.

The hearing before the court to determine the deposition's admissibility was analogous to a motion to suppress under section 2019, subdivision (e)(1). We find nothing in the record suggestive of errors or irregularities in which the testimony was transcribed or the deposition prepared, certified, sealed, endorsed or transmitted or otherwise dealt with by the officer (§ 2021, subd. (d)). As a motion to suppress, Zapata's objection to the reading of the deposition was properly overruled by the court.

We perceive policy and practical reasons for legislative indulgence on the use of unsigned depositions. Section 2016 lays down comprehensive rules and procedures for the taking of depositions. The scope of the examination is broad; inadmissible testimony may be compelled if reasonably calculated to lead to the discovery of admissible evidence; privileges and work product are protected; examination and cross-examination proceeds as permitted at trial; use of depositions at trial is carefully spelled out; objections to questions are saved subject to section 2021 exceptions; the deposition may be used if the court finds the witness is unavailable under Evidence Code section 240.

The failure to sign does not invalidate Benavides' testimony. The reporter certified the deposition was taken under section 2019, subdivision (f)(1), which provides in part: "The officer shall certify on the deposition and each copy thereof that the witness was duly sworn by such officer and that the deposition is a true record of the testimony given by the witness. . . ." Zapata's lawyer made no objections to any questions or answers either in the course of the deposition or as it was read to the jury.

The deposition testimony, absent objections to questions or answers, is not denigrated by Benavides' failure to review, correct, sign or refuse to sign. Surely, his signature is not necessary to the truthfulness of his assertions. Here, the pen is not mightier than the word.

 The usual recitation at the beginning of a deposition the signing may be before any notary is an anachronism. Section 2019, subdivision (e) has never included a requirement the deponent correct or sign the transcript before a notary. The approval-by-letter procedure added to section 2019, subdivision (e) in 1976 makes the stipulation a needless exercise. (1 Hogan, Modern Cal. Discovery (3d ed. 1981) § 2.30, p. 120.)

## IV

 Zapata took Chavez' deposition before trial. The court sustained objections to reading portions of his deposition to the jury on the grounds the questions were argumentative.

"MR. CARRIEDO: [Plaintiff's Attorney] I have an objection.

"MR. KAMMER: [Appellant's Attorney]—through Line 21.

"THE COURT: Give me the copy back. 18, Line what, Mr. Kammer?

"MR. KAMMER: Line 6 through Line 21.

"THE COURT: All right. You have an objection. The grounds, Mr. Carriedo?

"MR. CARRIEDO: Your Honor, it's requesting information that is basically the legal issues as to cause.

"THE COURT: Sustained. It's an argumentative question.

"MR. KAMMER: To the whole passage or just the first question?

"THE COURT: All I'm looking at is the question at Line 6.

"MR. KAMMER: I'd resume at Line 9.

"THE COURT: Want to take up there? I don't know whether that's objected to.

"MR. CARRIEDO: I wouldn't have any objection to that. I object to Line 14.

"THE COURT: That's sustained as to 14.

"MR. CARRIEDO: Also 17.

"THE COURT: Sustained as to that.

"MR. CARRIEDO: The next one is—I object to No. 26.

"THE COURT: Sustained as to that.

"MR. KAMMER: Your Honor, I'm not going to read any more of the deposition. I'd like to read now the plaintiff's Answer to our Interrogatory No. 29, which was verified under oath on September 26th, 1979."

No objections to the form of the questions were made by Chavez' counsel at the taking of the deposition.

The questions and answers excluded were these:

"Q: Do you claim that there was any defect in the vessel or the net that caused this incident?

"A: No. It was just bad weather, a lot of wind.

"Q: Was there a storm?

"A: No. Just a lot of wind.

"Q: Do you have any approximation of the speed of the wind?

"A: No. I just know it was a real strong wind.

"Q: Did anyone on board the ship do something wrong that they weren't supposed to do that caused this?

"A: No.

"Q: Did anyone on board the ship forget to do something that caused your accident?

"A: No.

"Q: It was the weather?

"A: Yes.

"Q: Do you have any knowledge of any facts concerning whether or not the ship was unseaworthy?

"A: The boat was in good condition." Zapata argues the objection was to the form of the questions and Chavez' failure to object when the question was asked at the deposition waived his right to make the objection at trial (§ 2021, subd. (c)).

■ Questions subject to objection as to form include leading questions (subject to exceptions such as cross-examination, examination of an adverse witness, preliminary matters and expert witnesses) and argumentative, repetitive, uncertain or unintelligible, omnibus or compound questions and those assuming facts not in evidence (Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, §§ 1155-1162; Cal. Trial Objections (Cont.Ed.Bar 1967) part III, Objections to Form of Questions, pp. 47-75). None of the questions put to Chavez, an adverse witness, during the deposition can be characterized objectionable as to form.

■ The objection to the excluded question failed to identify specific grounds legally cognizable as defective (Evid. Code, § 353). Zapata's counsel did not point out to the court the objection itself was insufficient and accepted without remonstrance the exclusion of Chavez' deposition testimony on argumentative grounds. However, he was not required to risk judicial displeasure by argument after the court ruled. Further, an offer of proof was unnecessary as the deposition was before the court. (*Tossman* v. *Newman* (1951) 37 Cal.2d 522, 525 [233 P.2d 1]; Evid. Code, § 354.)

Chavez' deposition testimony was improperly excluded. However, the error did not result in a miscarriage of justice such to reverse the judgment. Chavez was present at the trial and available for further questioning as to the issues covered by the excluded deposition testimony (*California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46 [111 Cal.Rptr. 433]). The excluded testimony suggested the injury was occasioned by the weather and not the unseaworthiness of the vessel, thus impeaching Chavez' trial testimony. Benavides' testimony the winch operator failed to warn Chavez supports the verdict. Ernest Garcia's testimony as to the winch operator's duty to warn is unaffected by the excluded testimony. The exclusionary error did not result in a miscarriage of justice.

V

■ Zapata contends the $150,000 jury award is excessive, is not supported by the evidence and requires reversal. ■ We apply the familiar

rule a reviewing court must uphold an award of damages whenever possible and all presumptions are in favor of the judgment. (*Bertero* v. *National General* (1974) 13 Cal.3d 43, 61 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) The determination of damages is a factual matter. In reviewing the amount of damages, we determine every conflict in favor of the prevailing party who is entitled to the benefit of every inference. We do not interfere with an award unless the verdict is so large it suggests passion, prejudice or corruption on the part of the jury. (*Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 655 [151 Cal.Rptr. 399]; *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230, 241 [116 Cal.Rptr. 733].) ▮ The award here does not shock our conscience or suggest passion, prejudice or corruption on the part of the jury.

Chavez, a fisherman, is left with a stiff wrist. His educational background and intellectual attainments limit him to physical labor. He cannot perform any task requiring wrist mobility or wrist stress. He will have lifelong pain in the wrist increasing with any use. Strenuous wrist activity will result in degenerative changes with swelling, tenderness and pain. The jury heard evidence Chavez' wages lost to time of trial ranged from $35,300 to $45,600. Future wage loss ranged from $110,700 to $143,000. Chavez testified to pain and suffering. He underwent two major surgeries, one to insert pins into his wrist and the second to take bone from his hip to graft to his wrist. Substantial evidence supports the award.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.