[No. B006661. Second Dist., Div. Seven. Nov. 7, 1985.]

STEPHEN E. GREENFIELD, Plaintiff and Appellant, v.
SPECTRUM INVESTMENT CORPORATION et al.,
Defendants and Appellants.

COUNSEL

Seltzer & Kay, Marvin Kay and Leonard Sacks for Plaintiff and Appellant.

Murchison & Cumming, Marilyn M. Cochran and William Schoettler, Jr., for Defendants and Appellants.

OPINION

**SCHWAB (H. J.), J.\***—This case involves an appeal and a cross-appeal arising out of a personal injury action involving a physical assault which occurred on February 2, 1980. Respondent and cross-appellant Stephen Greenfield (Mr. Greenfield) drove his wife Lenore Greenfield to an office of appellant and cross-respondent Spectrum Investment Corporation dba Budget Rent-A-Car, Inc. (Budget). She went into the office located at Topanga Canyon in Canoga Park, where she spoke to an employee of Budget, appellant and cross-respondent Timothy In (Mr. In). Mr. In informed her that in order to rent a car she should pay a higher deposit of $75 instead of the $20 deposit she paid in the past because the Greenfields did not have two credit cards.

Mrs. Greenfield left the office and called her husband. Mr. Greenfield attempted to persuade Mr. In to rent the car with the smaller deposit. Mr. In was recalcitrant and refused to rent the car. An argument ensued in which Mr. In told Mr. Greenfield to leave. As he started to leave, Mr. In struck Mr. Greenfield with a blow to the back of his head, knocking him to the floor. He began to hit and kick Mr. Greenfield as the latter attempted to wrap his head in his arms to protect himself from continual blows and kicks. Mr. Greenfield was lying on the floor with Mr. In repeatedly kicking and hitting him with judo chops. Mr. Greenfield crawled on his hands and knees out of the office to the front steps. He managed to get to a telephone where he called the police.

As a result of the beating, Mr. Greenfield suffered numerous injuries over his body including two fractures, one of his left ankle and one of his left

*Assigned by the Chairperson of the Judicial Council.

ribs. Further facts involving this matter will be discussed as they become relevant. Mr. Greenfield filed a lawsuit against Budget and Mr. In in an attempt to recover both compensatory and punitive damages. Mrs. Greenfield joined in the action seeking damages for loss of consortium and emotional distress.

A jury trial was held and the defense raised by Budget and Mr. In was to the effect that Mr. Greenfield had been the aggressor and Mr. In's actions were merely in self-defense. However, the jury verdict as to Mr. Greenfield and his wife was as follows:

(1) As to Mr. Greenfield, compensatory damages in the sum of $350,000 against Budget and Mr. In;

(2) As to Mr. Greenfield, punitive damages in the sum of $400,000 against Budget;

(3) As to Mr. Greenfield, punitive damages in the sum of $42,500 against Mr. In;

(4) As to Mrs. Greenfield, no damages either compensatory or punitive.

Budget and Mr. In filed a notice of intention to move for new trial and then filed a notice of motion for new trial and/or remittitur. Mrs. Greenfield also filed a motion for new trial because of the failure to award any damages. Mr. Greenfield moved for an order that prejudgment interest be paid pursuant to Civil Code section 3291 from February 17, 1983, the date of the offer to compromise.

On February 14, 1984, the trial judge entered the following orders:

(1) The motion for new trial as to compensatory damages was granted unless Mr. Greenfield accepted a reduction of the compensatory damages to the amount of $150,000;

(2) The motion for new trial as to punitive damages against Budget was granted unless Mr. Greenfield accepted a reduction of the punitive damages to the amount of $200,000;

(3) The motion for new trial as to punitive damages against Mr. In was granted unless Mr. Greenfield accepted a reduction of the punitive damages to the amount of $15,000;

(4) Mrs. Greenfield's motion for new trial was granted unless both Budget and Mr. In would accept an increase in punitive damages from zero to $15,000;

(5) Prejudgment interest was granted at 10 percent on the compensatory damages from February 17, 1983 until paid, but denied as to the punitive damages.

Mr. Greenfield accepted the remittitur. Both Budget and Mr. In rejected the additur in respect to Mrs. Greenfield. Budget and Mr. In appealed from the judgment in favor of Mr. Greenfield as remitted and from the order granting Mrs. Greenfield a new trial. Mr. Greenfield cross-appealed from the order conditionally granting a new trial to Budget and Mr. In (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 930-931 [148 Cal.Rptr. 389, 582 P.2d 980]) and Mrs. Greenfield cross-appealed from the judgment awarding her zero damages. Both Mr. and Mrs. Greenfield cross-appealed from the court's order denying prejudgment interest on the punitive damages.[1]

Budget and Mr. In contend that there is insufficient evidence to support the giving of instructions as to punitive damages and awarding them, that the award of compensatory damages is excessive, that the punitive damages as authorized against Budget are excessive and that the award of punitive damages against Mr. In is excessive. Mr. Greenfield urges in his cross-appeal that the orders purporting to grant Budget and Mr. In conditional new trials were fatally defective and that he is entitled to recover prejudgment interest on the punitive damage awards.

## I

*Sufficient Evidence Exists Supporting Punitive Damages Against Budget*

The issues raised by the appeal of Budget and Mr. In are primarily factual and as such the burden which they bear on appeal is extremely heavy. ▮ In reviewing the evidence, all conflicts must be resolved in favor of the prevailing party and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. When a verdict is attacked as being unsupportive, the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When

---

[1] In the opening brief of Budget and Mr. In, they note that they are ". . . not appealing from the order granting Lenore Greenfield's Motion for New Trial." In the opening brief of Mr. Greenfield's cross-appeal, it is noted that Mrs. Greenfield's cross-appeals are moot and that she is no longer a party to the within appellate proceedings.

there are two or more inferences which can be reasonably deduced from the facts, an appellate court is without power to substitute its deductions for those of the trial court. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]; *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689]; *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

■ Under Civil Code section 3294 a ". . . corporate employer will be liable for punitive damages based on an employee's conduct where a managing agent of the corporation had advance knowledge of the employee's unfitness and nonetheless employed him or where the managing agent ratified the employee's conduct." (*Siva* v. *General Tire & Rubber Co.* (1983) 146 Cal.App.3d 152, 159 [194 Cal.Rptr. 51].)[2]

"Ratification is a question of fact. The burden of proving ratification is upon the party asserting its existence. But ratification may be proved by circumstantial as well as direct evidence. Anything which convincingly shows the intention of the principal to adopt or approve the act in question is sufficient." (Citations omitted.) (*Hale* v. *Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681, 691-692 [117 Cal.Rptr. 146], overruled on another point in *Egan* v. *Mutual of Omaha Ins., Inc.* (1979) 24 Cal.3d 809, 822, fn. 5 [169 Cal.Rptr. 691, 620 P.2d 141]; *Siva* v. *General Tire & Rubber Co., supra,* 146 Cal.App.3d at p. 159.)

■ In analyzing whether there was sufficient evidence of ratification necessary for punitive damages, the following language is noted in *Hartman* v. *Shell Oil Co.* (1977) 68 Cal.App.3d 240, 250 [137 Cal.Rptr. 244]: "It must be admitted there is no direct evidence of Shell's directors or officers—board members—authorizing or condoning the misrepresentations here involved. It would indeed be a startling bit of evidence if such did appear. The jury was left with a totality of circumstantial evidence and those reasonable inferences of knowledge, approval or ratification which could be derived therefrom."

---

[2]Section 3294 of the Civil Code reads in part as follows: "(a) In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

"(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

Furthermore, in analyzing evidence utilizing the above standards, it may be inferred based upon the totality of the testimony that lower level employees "had approached management" or "being aware of management's attitude, they decided to do nothing." (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 814 [174 Cal.Rptr. 348].) Aladdin Premji had managed the Canoga Park location where the assault occurred, and he had been supervising Mr. In for a period of six months. ■ An office manager of a branch office may be deemed a managing agent for purposes of the imposition of punitive damages as to an employer. (*Hobbs* v. *Eichler* (1985) 164 Cal.App.3d 174, 193 [210 Cal.Rptr. 387].) ■ Mr. Premji had been general manager for approximately six months before the assault occurred. He hired and fired the employees of Budget and was in charge of customer relations at the Budget locations. Michael Kesner was one of Budget's vice presidents, chief of regional operations and a part owner. Both Mr. Premji and Florence Evans, a claims manager, who it shall be seen, becomes very relevant, reported to Mr. Kesner.

The type of work which Mr. In did was very sensitive. On many occasions customers became emotional and got involved in arguments with the employees of Budget. There was evidence presented by lower level employees regarding Mr. In's irascible nature. At times he would raise his voice, talk loudly to the customers and even say, "Get the hell out." There is evidence that Mr. In had problems getting along with subordinate employees. Furthermore, one of these employees noted that Mr. In was the type of person who would "blow up" easily, and if someone gave him a hard time, he would let that individual know. In fact, Mr. In had informed one of the lot men in Budget shortly before the Mr. Greenfield incident, that he had been in a fight outside the company premises. In his deposition, Mr. In admitted that he had been counseled by Mr. Premji, Budget's general manager, about complaints made against him and about being more tactful with customers.[3]

As noted before, Mr. Premji would give feedback on employees to Mr. Kesner. Mr. In had been transferred from several of the Budget offices and one individual whom he had trained had been appointed manager over him despite his greater experience. Although there could have been many reasons for the transfers and lack of promotion, the jury could properly infer in light of the observations of his short temper by the lower level employees and his counseling by Mr. Premji that these actions were due to Mr. In's volatile nature.

---

[3]When Mr. In testified, he denied that Mr. Premji had told him any complaints were made about him and to be more tactful with people.

This becomes relevant to the issue of ratification. Jeffrey Silverman, a former lot man at Budget, testified that at the time of the assault, he heard Mr. In and Mr. Greenfield having a heated conversation wherein he asked Mr. Greenfield to ". . . get the fuck out of the office." Mr. Silverman came on the lot and saw Mr. Greenfield walking out of the office with an abrasion on his forehead, bleeding from the head and limping. Mr. Greenfield told Mr. Silverman he had gotten into a fight, he had been on the ground and he had been kicked. Mr. Silverman took Mr. Greenfield to the hospital. Mr. Greenfield complained that his body had been injured, his leg was very sore and he could not walk on it. At the hospital Mr. Greenfield was unable to leave the car without assistance. Mr. Silverman helped him out of the car and got a wheelchair. In fact, Mr. Silverman thought that Mr. Greenfield's leg was broken.

Mr. Silverman returned to the Budget office and asked Mr. In what happened. Mr. In said that Mr. Greenfield had no credit cards and only cash and they got into a heated altercation. Mr. In further related he told Mr. Greenfield to get the "fuck" out of the office, and Mr. Greenfield did not leave. Mr. In went to subdue him and he kicked Mr. Greenfield while on the ground.

Days later, a woman who worked for Budget Rent-A-Car, came to Mr. In's office and spoke to him concerning the incident. Mr. Silverman heard the lady suggest to Mr. In what he should say as to how the fight occurred and say that Mr. Greenfield was ". . . out of hand, he was yelling at you and, you know, defend yourself . . . ." This version suggested by the female employee of Budget was totally different from what Mr. In had told Mr. Silverman had taken place. Although there was no direct evidence as to the identity of the lady who told Mr. In to change his story, there was circumstantial evidence that it was one Florence Evans, a claims manager who handled the automobile accidents. Mrs. Evans testified that she happened to come to the Budget office at Canoga Park. When she went inside Mr. In's office, she spoke to him of the incident and saw one of the lot men come in and out with her keys.

Thus the jury could infer, even though Mrs. Evans denied telling Mr. In to lie about the altercation, that the incident she described was the same incident depicted by Mr. Silverman. Mrs. Evans also testified that as claims manager, she would report auto liabilities to Mr. Kesner.

Mr. Premji testified that he had spoken to Mr. In and Mr. Silverman after the assault on Mr. Greenfield. He made no written report of the incident and reduced nothing to writing. Mr. Premji stated there was no investigation

made of the matter because he thought it had been taken care of and was concluded.

Furthermore, there was evidence that Mr. In was not terminated or penalized by Budget because of his actions but that he left voluntarily in April, approximately two months later, to return to his residence in Hawaii. Failure to discharge an employee under such circumstances is evidence in and of itself to show ratification. (*Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 524 [154 Cal.Rptr. 874]; *Coats* v. *Construction & Gen. Laborers Local No. 185* (1971) 15 Cal.App.3d 908, 914 [93 Cal.Rptr. 639]; *Shoopman* v. *Pacific Greyhound Lines* (1959) 169 Cal.App.2d 848, 856 [338 P.2d 3].) The totality of the above evidence is more than sufficient upon which to sustain the finding of punitive damages as against Budget, and instructions were properly given accordingly.

## II

*The Conditional Grant of the New Trials Must Be Reversed*

Appellants Budget and Mr. In contend that the compensatory and punitive damages awarded, even as modified by the trial court, are excessive. ▓▓ However, the very serious question raised by Mr. Greenfield in his cross-appeal as to the viability of the conditional new trial orders must first be resolved. The trial judge granted new trials on the issues of compensatory and punitive damages unless Mr. Greenfield was willing to accept the reduced compensatory damages as to Mr. In and Budget in the amount of $150,000, the reduced punitive damages as to Budget in the amount of $200,000 and the reduced punitive damages as to Mr. In in the amount of $15,000. The trial judge in so ruling stated in the minute order that the conditional new trials were being granted on the grounds of excessive damages. However, no reasons were stated within that minute order. The trial judge did set forth extensive reasons, orally, on the record as to why he was granting the conditional new trials. Aside from the above noted minute order and the oral statements of the trial court, there were no other written specifications.

Code of Civil Procedure section 657 provides in pertinent part as follows: "The order passing upon and determining the motion [for a new trial] must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing

with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons."

There was no adequate written specification of reasons. ■ It has been held that where a trial court grants a new trial on the grounds of excessive damages, the trial court must specify the reasons for such order in writing. In the absence of such adequate specification of reasons, the order will be reversed and the jury verdict will be reinstated. This is true even if the trial judge makes detailed oral findings in the record. (*Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892, 903 [215 Cal.Rptr. 679, 701 P.2d 826]; *La Manna* v. *Stewart* (1975) '13 Cal.3d 413, 424-425 [118 Cal.Rptr. 761, 530 P.2d 1073]; *Stevens* v.: *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 60-63 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059]; *Bigboy* v. *County of San Diego* (1984) 154 Cal.App.3d 397, 406-408 [201 Cal.Rptr. 226].) Although the specification need not be as detailed relative to claims of excessive punitive damages as for allegations concerning compensatory damages, a proper written specification of reasons is nevertheless required. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at pp. 932-933.)

The same rules apply as to conditional new trial motions such as the ones herein in which the prevailing party accepts a remission of damages rather than have the motion for new trials granted. (*Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 420 [185 Cal.Rptr. 654, 650 P.2d 1171]; *Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 931.) ■ It would therefore seem that the conditional granting of the motions for new trial must be reversed unless there was substantial compliance with section 657 of the Code of Civil Procedure. (*Herman* v. *Shandor* (1970) 8 Cal.App.3d 476, 481 [87 Cal.Rptr. 443].)

However, when a motion for new trial is granted, there cannot be any substantial compliance by the existence of an oral recitation on the record. (*La Manna* v. *Stewart, supra,* 13 Cal.3d 413, 423-425.) There is no rational distinction in the consequence relative to conditional grants of new trials as to whether the remission of damages was rejected, or, as herein, accepted. (See *Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 931.) In this case the judge, who handled the trial in an exceptionally fair and highly commendable manner, gave detailed oral statements as to his reasons for the conditional grant of the new trials. Unfortunately, such oral statements, by reason of the above authorities, cannot be deemed compliance with section 657, whether substantial or otherwise. In light of the aforementioned precedent, the conditional grant of the new trials must be reversed, and the original judgment reinstated.

## III

*The Compensatory and Punitive Damages Awarded by the Jury Are Supported by the Evidence*

■ Even in light of the reversal of the conditional grant of the new trial, there can be no doubt that the compensatory damages as adduced by the jury should be upheld. ■ "The determination of damages is a factual matter. In reviewing the amount of damages, we determine every conflict in favor of the prevailing party who is entitled to the benefit of every inference. We do not interfere with an award unless the verdict is so large it suggests passion, prejudice or corruption on the part of the jury. [Citations.]" (*Chavez* v. *Zapata Ocean Resources, Inc.* (1984) 155 Cal.App.3d 115, 125 [201 Cal.Rptr. 887].)

■ Here the $350,000 compensatory damages set by the jury was definitely supported by the record. Mr. Greenfield was almost 59 years old at the time of the assault and had previously suffered two heart attacks. He had been beaten all over his body and sustained two fractures. He was disabled for work for six months and handicapped. Furthermore, the trauma to his neck caused permanent injury involving pain and disability. There was a great deal of emotional distress in terms of an intentional assault wherein Mr. Greenfield feared for his life and suffered anxiety over his condition in light of the violence forced upon him. Although there are other factors which would support the compensatory damage verdict, these alone would provide a proper basis and the $350,000 award will not be set aside.

■ In the same way, the $400,000 punitive damages awarded by the jury against Budget must also be upheld. (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 821.) The violent acts by and against Mr. Greenfield were intentional, yet, instead of rectifying the situation, Budget did nothing and, as can be inferred, intended to cover up the matter. It should be noted that the propriety of the punitive damages is supported by the concessions of Budget's counsel in the motion for new trial that the amount of punitive damages of $400,000 awarded by the jury was reasonable. (Cf. *Horn* v. *Atchison T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 604-605 [39 Cal.Rptr. 721, 394 P.2d 561]; *Irwin* v. *Pacific Southwest Airlines* (1982) 133 Cal.App.3d 709, 714 [184 Cal.Rptr. 228].) Looking at all the circumstances, which have heretofore been discussed, it cannot be said that the punitive damages against Budget were disproportionate. As such they are upheld. (*Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 711 [201 Cal.Rptr. 528]; *Burnett* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991, 1010 [193 Cal.Rptr. 206].)

Mr. In urges, however, that the jury punitive damage award as to him of $42,500 was excessive in light of his lack of wealth. But the record reflects that no evidence was introduced concerning Mr. In's income and net worth. The only discussion concerning this matter involved statements of counsel (not before the jury, but in arguments to the court concerning the motion for new trial) to the effect that Mr. In was making $2,000 a month and owned an automobile.

Relative to the punitive damages, neither side introduced evidence of Mr. In's wealth. ■ The burden of proof is on the wrongdoer to demonstrate in the trial level that a particular award of punitive damages is too great a penalty because of his limited financial position. (*Vossler* v. *Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952, 964 [192 Cal.Rptr. 219]; *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 643 [178 Cal.Rptr. 167]; *Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422, 439 [114 Cal.Rptr. 380]; *Hanley* v. *Lund* (1963) 218 Cal.App.2d 633, 645-646 [32 Cal.Rptr. 733].) Although there are comments in *Forte* v. *Nolfi* (1972) 25 Cal.App.3d 656, 689 [102 Cal.Rptr. 455] and *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 179 [102 Cal.Rptr. 455], which may appear to go to the contrary, they are not sufficient to dispel this longstanding rule. (*Vossler* v. *Richards Manufacturing Co., supra,* 143 Cal.App.3d at pp. 961-964.) ■ Assuming that counsel's statements are correct that Mr. In was making $2,000 per month and owned an automobile, the $42,500 punitive damages would not be excessive in light of the intentional and willful violent acts which he perpetrated on Mr. Greenfield. Therefore, the award of punitive damages as determined by the jury against Mr. In will be upheld.

IV

*Prejudgment Interest Should Have Been Awarded as to Punitive Damages*

■ As before noted, Mr. Greenfield is appealing from the court's order denying prejudgment interest on the punitive damages. Mr. Greenfield had filed a motion seeking prejudgment interest based on the ground that on February 17, 1983, he had made an offer to compromise pursuant to section 998 of the Code of Civil Procedure, which Budget and Mr. In had rejected. The trial judge allowed prejudgment interest on the compensatory damages from February 17, 1983, but refused to assess prejudgment interest as to the punitive damages. However, we find that under section 3291 of the Civil Code, a plaintiff may claim prejudgment interest as to both compensatory and punitive damages.[4]

---

[4]Section 3291 of the Civil Code reads in pertinent part as follows: "In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned

Budget and Mr. In urge that prejudgment interest should not be allowed as to punitive damages, because such damages are a creature of statute and such prejudgment interest should not be authorized unless there is clear statutory authority for their allowance. But section 3291 clearly states that ". . . the judgment shall bear interest at the legal rate of 10 percent . . . ." There is only one judgment. (Code Civ. Proc., § 577; *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 701 [128 P.2d 357].) In light of the utilization of the term "judgment" in section 3291, both compensatory and punitive damages are encompassed therein and prejudgment interest on the punitive damages should be allowed.

Budget urges, however, that punitive damages as to an employer can only be awarded on the basis of the actions of an employee if ". . . the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded, or was personally guilty of oppression, fraud, or malice," under Civil Code section 3294. Section 3291 refers to the term "tort," whether "by negligence or by willful intent," the tort herein being the intentional assault by Mr. In on Mr. Greenfield. Budget was responsible for the intentional tort on Mr. Greenfield by Mr. In's actions. Thus, even though punitive actions might be geared to the test under section 3294 of the Civil Code, such would not negate the fact that the tort of the assault was committed by "willful intent."

V

*Disposition*

Accordingly, the orders granting new trials are reversed. The trial court is directed to enter judgment in favor of Mr. Greenfield for $350,000 in compensatory damages against Budget and Mr. In; punitive damages in the sum of $400,000 against Budget; and punitive damages in the sum of $42,500 against Mr. In. Also, the trial court is directed to allow interest at the rate of 10 percent from February 17, 1983, until paid on both compensatory and punitive damages.

---

by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of the other person, corporation, association, or partnership, and whether the injury was fatal or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section.

"If the plaintiff makes an offer pursuant to section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

Except as otherwise modified, the judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.