Filed 5/13/22; Certified for Publication 6/6/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| JANE DOE et al., | C092065 |
| Plaintiffs and Respondents, | (Super. Ct. No. PC20160359) |
| v. | |
| ANDREW KAM LEE , | |
| Defendant and Appellant. | |

SUMMARY OF THE APPEAL

Appellant Andrew Kam Lee argues that a punitive damages award equal to the value of his alleged interest in real property held by an LLC of which he was once a member is excessive under California law and not supported by substantial evidence of his ability to pay the punitive damages award.  The six Doe respondents failed to introduce any other evidence regarding appellant's capacity to pay punitive damages, and we agree that this award is excessive given the evidence.

1

Appellant also argues the trial court abused its discretion in denying his request for a new trial on the punitive damages issue. Because we vacate the punitive damages award as excessive and not supported by substantial evidence, we need not consider this issue.

FACTS AND HISTORY OF THE PROCEEDINGS

Complaint and Trial

Respondents brought an action against appellant alleging various forms of invasion of privacy; infliction of emotional distress; violation of Penal Code section 635, which penalizes the use of devices to eavesdrop on the telephone communications of others without permission; trespass to real property; and negligent infliction of emotional distress

According to a declaration filed by respondents in opposition to the motion for a new trial, prior to trial, appellant did not propound discovery or notice depositions. However, on their exhibits list provided to defendant before trial, plaintiffs identified "Plaintiffs' Discovery Responses and Document Production."

The bench trial took place on August 27, 2019. Respondents were represented by counsel and appellant appeared in pro. per. Neither party has included in the record evidence regarding any factual issue other than (a) some of the documents concerning appellant's financial status and corporate interests that were presented to the trial court and; (b) a summary of appellant's testimony, contained in a settled statement, regarding his ownership interest in the Lee Family 6 Children, LLC (LLC).

The only witnesses at the trial were the parties, including appellant.

The following exhibits were both marked and admitted at trial, and we consider them as evidence to be considered in evaluating the punitive damages award:

- Appellant's tax returns from 2014, 2015, and 2016. As the trial court noted, the 2016 tax returns do not confirm that he sold his interest in the LLC. The 2014 tax

2

returns state appellant and his wife had a combined adjusted gross income of $178,583 in 2014 and $67,133 in 2015. The 2016 return shows appellant was single in 2016 and had an adjusted gross income of $8,964. These returns were provided by the respondents.

- The first six pages of various documents filed with the Secretary of State regarding the LLC. According to these records, appellant was a member of the LLC on August 3, 2018. These records were provided by the respondents.

- A purchase agreement that reflects appellant sold his membership interest in the LLC to the other members for $125,000, on November 30, 2016. This purchase agreement was provided by the appellant.

- A certified public accountant's statement of loss, which we do not have a copy of, but which, presumably, as the name suggests, would have indicated some sort of financial loss. This record was provided by the appellant.

Certain exhibits were marked but not admitted, and, therefore, we do not consider them evidence to be considered in evaluating the punitive damages award. (See *People v. Cordova* (2015) 62 Cal.4th 104, 137 ["The court refused to admit the exhibit into evidence due to a lack of foundation—no one could say what it was—a ruling defendant does not challenge on appeal. Thus, it was not evidence in the case, and the prosecutor was not permitted to discuss it before the jury"].)

According to the Summary of Proposed Settled Statement approved by the trial court, at trial appellant, "testified he sold his 1/6 interest [in the LLC] to his siblings on November 30, 2016. There is documentation, 'Membership Interest Purchase Agreement' and it is signed by the seller (Andrew Kam Lee) and the buyers. (Exhibit 204.) [However, t]here was also contradicting evidence from the Secretary of State that Andrew Lee remained a member on November 9, 2016 and on August 3, 2018 there had been 'no change' filed by Wendy Voo, the accountant (Exhibit 18.) Additionally, Mr. Lee did not call any witnesses, including his five siblings who signed the purchase

3

agreement or the accountant, Ms. Wendy Voo, to corroborate the appellant's testimony. [A]ppellant's exhibits . . . included bank statements from 2015 and 2019 which were marked. (Exhibits 205, 207.) Appellant provided no bank statements or any other financial records indicating a transfer of the $125,000 obtained from the sale of his interest in the 1/6 Lee Family 6 Children, LLC. Finally, appellant's 2016 tax returns were admitted into evidence which does not show any income, sale or transfer related to the sale of appellant's 1/6 Lee Family 6 Children, LLC. (Exhibit 19.) The court finds Andrew Kam Lee's testimony was not credible. The court finds the appellant owned 1/6 of the Lee Family 6 Children, LLC at the time of trial."

Findings and Judgment

Following the bench trial, on September 23, 2019, the trial court found (1) appellant intruded on the six Doe respondents' rights to privacy; (2) five of the respondents had a reasonable expectation of privacy and appellant intentionally intruded into their homes; (3) the sixth respondent had an expectation of privacy and appellant intentionally intruded under her skirt in public; (4) appellant's intrusion would be highly offensive to a reasonable person; and (5) appellant's acts were a substantial factor in causing harm to the respondents. The trial court awarded the respondents a total of $24,758 in past and future economic damages and $800,000 in noneconomic damages.

The court then found, by clear and convincing evidence, that, (1) appellant engaged in conduct with malice and oppression; (2)(a) appellant's conduct was reprehensible, (b) there was a reasonable relationship between the amount of punitive damages and respondents' harm, and (c) appellant has the ability to pay; and (3) appellant was a member of the Lee Family 6 Children, LLC. On this basis, the trial court awarded respondents punitive damages in the amount of $230,400, which was calculated based upon the 1/6th value of a residence held by the Lee Family 6 Children, LLC.

4

The trial court also awarded post judgment interest on the total award of $1,055,158 at a rate of 10 percent (10%) per annum.

Respondents served appellant with a notice of entry of the judgment by United States mail on October 1, 2019.

Appellant filed a motion for a new trial, which the court denied. Appellant then filed the instant appeal.

DISCUSSION

I

*The Punitive Damages Award Was Excessive*

Appellant argues that substantial evidence does not support the trial court's punitive damages award and that, when considering the evidence that was presented, the award is excessive under the California test for assessing punitive damages. We agree. The punitive damages award here cannot stand because there is insufficient evidence of appellant's financial condition to support it, and what little evidence was provided regarding his financial condition suggests the award was excessive.

A. Standards of Review of Punitive Damages Awards

Civil Code section 3294 provides, "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Here, appellant does not challenge the trial court's decision that the evidence demonstrated he was guilty of oppression, fraud, or malice, that would justify punitive damages. He only challenges the amount of the award and the strength of the evidence considered by the trial court in making the award.

5

In reviewing punitive damages awards for excessiveness under California law, we apply a substantial evidence standard. (*Kelly v. Haag* (2006) 145 Cal.App.4th 910, 916 (*Kelly*).) We reverse " 'as excessive only those judgments which the entire record, when viewed most favorably to the judgment, indicates were rendered as the result of passion and prejudice.' " (*Neal v. Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 927 (*Neal*); see also *Bankhead v. ArvinMeritor, Inc.* (2012) 205 Cal.App.4th 68, 77.) "We are also guided, however, by the recognition that punitive damages are not favored in the law because they create the anomaly of excessive compensation." (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1658; see also *Dumas v. Stocker* (1989) 213 Cal.App.3d 1262, 1266 (*Dumas*) ["punitive damages constitute a windfall"].)

In *Neal,* our Supreme Court identified three factors based on "established principles" to consider in "[i]n making the indicated assessment" of whether an award is excessive. (*Neal*, *supra*, 21 Cal.3d at pp. 927-928.) The first factor to consider is the reprehensibility of a defendant's actions: "the more reprehensible the act, the greater the appropriate punishment, assuming all other factors are equal." (*Id.* at p. 928.) The second factor to consider is the relationship between the amount of compensatory and punitive damages, because "even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small." (*Ibid.*)

Under the third factor, which is the one we focus on here, we consider, "the wealth of the particular defendant," because "obviously, the function of deterrence . . . , will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. [Citations.] By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter." (*Ibid.*) As such, a punitive damages award "must bear some reasonable relationship to the net worth of the defendant, and where the award is grossly disproportionate to the defendant's wealth, a

6

presumption arises that it was the result of passion and prejudice." (*Dumas*, *supra*, 213 Cal.App.3d at p. 1267.)

Here, appellant's challenge to the punitive damages award rests on an argument that the punitive damages award is inappropriate under the third factor, that is, appellant argues evidence was lacking regarding his wealth and, to the extent there was evidence of his wealth, the award is excessive. He does not argue that the award is not justified considering the first two *Neal* factors. We are allowed to consider the reasonableness of the award on the basis of its excessiveness alone: "[e]ven if an award is entirely reasonable in light of the other two factors in *Neal*, *supra*, 21 Cal.3d 910 . . . , the award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 111 (*Adams*), italics added; see also *Zaxis Wireless Communications v. Motor Sound Corp.* (2001) 89 Cal.App.4th 577, 582 (*Zaxis*) ["where neither the reprehensibility of the defendant's conduct nor the magnitude of harm to the plaintiff is at issue, the question is whether the amount of damages exceeds the defendant's ability to pay"].) The "purpose of punitive damages is not served by financially destroying a defendant. The purpose is to deter, not to destroy." (*Id.* at p. 112.)

In considering this third factor, "an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition. The absence of this evidence thwarts effective appellate review of a claim that punitive damages are excessive." (*Adams*, *supra*, 54 Cal.3d at p. 109.) "Evidence Code section 500, the traditional allocation of burden of proof, and fundamental fairness require the plaintiff rather than the defendant to introduce this evidence." (*Ibid.*) There are mechanisms in place that give plaintiffs the tools they need to ensure they can collect the necessary information to establish a defendant's financial condition. "[U]nder Civil Code section 3295, subdivision (c), the plaintiff is allowed, on a proper showing, to 'subpoena documents or witnesses to be available at the trial for the

purpose of establishing the profits or financial condition' of the defendant. The plaintiff may also obtain pretrial discovery of that information." (*Adams*, *supra*, 54 Cal.3d at p. 122.) Additionally, "[a] number of cases have held that noncompliance with a court order to disclose financial condition precludes a defendant from challenging the sufficiency of the evidence of a punitive damages award on appeal." (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942.) "[T]here is no reason, in light of discovery and subpoena powers, to shift the burden of proof on the issue of the defendant's wealth." (*Storage Services. v. Oosterbaan* (1989) 214 Cal.App.3d 498, 516 (*Oosterbaan*).)

"Although net worth is the most common measure of the defendant's financial condition, it is not the only measure for determining whether punitive damages are excessive in relation to that condition." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 624.) Thus, under the "unusual circumstances" in the civil action brought by the families of Nicole Brown Simpson and Ronald Lyle Goldman against OJ Simpson, the court of appeal upheld a punitive damages award of $25 million, despite Simpson's estimated net worth of $15.4 million, when the evidence demonstrated that the defendant was, "a wealthy man, with prospects to gain more wealth in the future." (*Id.* at pp. 581, 624-625.)

Likewise, in *Zaxis*, *supra*, 89 Cal.App.4th at pages 580-581, the court affirmed an award of punitive damages in the amount of $300,000, even though the defendant had a negative net worth of $6.3 million, because the evidence--which included financial statements and CFO testimony--showed that the defendant had the ability to pay the award. (*Id.* at pp. 580-581.) Observing the "ease with which net worth is subject to adjustment for amortization and depreciation," the court pointed out that, "the net worth calculation" for the corporate defendant "included accumulated depreciation . . . and a note to the sole shareholder . . . ," which "represent[ed] a loss for accounting purposes," but "did not impact" the defendant's ability to pay in the same way that salary and wage expenses would. (*Zaxis*, *supra*, 89 Cal.App.4th at p. 583.)

The *Zaxis* court also noted that the defendant's financial statement showed it had "cash on hand and a checking account balance of over $19 million," as well as a credit line of $50 million, of which $5.3 million remained available to the defendant. The extension of the line of credit "indicate[d] the lender made a determination [the defendant] had the ability to pay amounts well in excess of the . . . punitive damage award." (*Zaxis*, *supra*, 89 Cal.App.4th at p. 583.) Accordingly, the award was not "excessive as a matter of law or so disproportionate to the ability to pay as to indicate passion or prejudice on the part of the jury." (*Ibid.*)

"[I]n most cases, *evidence of earnings or profit alone are not sufficient 'without examining the liabilities side of the balance sheet.' "* (*Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 680 (*Baxter*), italics added.) " 'What is required is evidence of the defendant's ability to pay the damage award.' (*Robert L. Cloud & Associates, Inc. v. Mikesell* [(1999)] 69 Cal.App.4th [1141,] 1152.) Thus, there should be some evidence of the defendant's actual wealth. *Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income.*" (*Ibid.*, italics added.)

### B.     This Punitive Damages Award is Not Supported by Sufficient Evidence

As a preliminary matter, we find that the trial court's conclusion that appellant retained a 1/6 interest in the LLC--an interest that the court concluded was worth roughly $230,400--at the time of trial was supported by substantial evidence. The records on file with the Secretary of State supported the conclusion that appellant owned a 1/6 interest in the LLC. The only evidence appellant presented to counter the conclusion that he had a 1/6 ownership interest in the LLC was his own self-serving testimony, and a document that only he authenticated, despite the purported existence of five other signatories to the document.

9

Taking into account the appellant's 2016 tax returns, and noting he did not provide 2016 bank records that presumably would have reflected an influx of funds in the amount of the sale, the trial court found appellant's representations that he had sold his interest in the LLC to be "not credible." Given that trial courts are in the best position to assess witness credibility, we find no reason to disagree with the trial court's conclusions regarding appellant's credibility on this point, and that substantial evidence supported the trial court's conclusion that appellant retained his membership interest in the LLC at the time of trial. (See *Hollywood v. Superior Ct.* (2008) 43 Cal. 4th 721, 729.) Thus, our analysis here assumes the record did establish that appellant retained an interest in the LLC at the time of trial and that the trial court concluded that interest was worth $230,400.

Nonetheless, even assuming appellant retained his membership interest, the admitted evidence does not support this punitive damages award. The record does not show that appellant has any other assets to his name. It does not contain any record or analysis of his liabilities or expenses--though we know he owes over $800,000 in compensatory damages. It does not show that he has a source of income that would enable him to pay off the compensatory damages award, cover his necessary expenses, and pay the punitive damages award without rendering him destitute. If an interest in the property is appellant's primary asset and represents roughly all of his wealth or potential wealth--and we have no reason to conclude otherwise, as respondents have failed to meet their burden to demonstrate otherwise--this award would take up all of it, and prior decisions suggest an award taking up that magnitude of a person's assets is excessive.

In *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 393-396 (*Devlin*), the court included an appendix identifying cases in which courts of appeal considered the propriety of punitive damages. The highest percentage of known net worth awarded was in *Schomer v. Smith* (1980) 113 Cal.App.3d 828, where the award represented 10 percent of the defendant's known net worth; though the court noted that it

10

was possible an award in *Miller v. Elite Ins. Co.* (1980) 100 Cal.App.3d 739 represented 18 percent instead of the assumed 2-3 percent of a defendant's net worth. (*Devlin*, *supra*, 155 Cal.App.3d at p. 395.) Awards of 31 percent, 9.4 percent, over 15 percent, and 28.85 percent of a defendant's net worth were reversed as excessive. (*Id.* at pp. 394, 396.) A punitive damages award equaling 6 percent of a defendant's net assets was affirmed, while one that was 14.83 percent of a defendant's net assets was reversed as excessive. (*Id.* at pp. 394 & 395.) An award equal to "[a]bout 3 months salary" and 10 percent net worth of a defendant was affirmed, while one worth 5.8 months net income and 28.85 percent net worth of a defendant was reversed as excessive. (*Id.* at pp. 395, 396.) In *Oosterbaan*, *supra*, 214 Cal.App.3d at page 507, the trial court entered a judgment awarding a plaintiff compensatory damages totaling $1,044,250 from a real estate agent, Oosterbaan, and Oosterbaan's employer. The judgment awarded plaintiff $75,000 in punitive damages from Oosterbaan. (*Id.* at p. 508.) Evidence suggested Oosterbaan's net worth was between $150,000 and $200,000. (See *id.* at pp. 514-515.) The court found, "the award," which at its lowest would be approximately 33 percent of the defendant's net worth, "represent[ed] a disproportionate share of the defendant's net worth, it is presumptively the result of passion and prejudice and cannot be sustained." (*Id.* at p. 516.)

This analysis in *Devlin* and *Oosterbaan* suggest a punitive damages award that is equal to almost the entirety of a defendant's sole identified asset is excessive under California law.

Respondents attempt to lessen the import of the *Oosterbaan* decision by describing its discussion of *Greenfield v. Spectrum Investment Corp.* (1985) 174 Cal.App.3d 111 (*Greenfield*). (See *Oosterbaan*, *supra*, 214 Cal.App.3d at p. 515.) Respondents observe that the *Oosterbaan* court distinguished the *Greenfield* decision which, "upheld a $42,500 punitive damage award against an individual who was 'making $2,000 per month and owned an automobile' " by noting that, "Oosterbaan's conduct was

11

not comparable to that of the defendant in *Greenfield*, who had severely beaten the plaintiff with a series of kicks and judo chops." (See *Oosterbaan*, *supra*, 214 Cal.App.3d at p. 515.)

Respondents, without submitting a supplemental appendix with evidence describing the nature of appellant's conduct, argue that appellant's conduct here also demonstrated a high degree of reprehensibility and, therefore, a punitive damages award that represents a higher financial burden to appellant is warranted here.

But in *Greenfield*, the court relied on a rule that placed the burden of proof on defendants "to demonstrate in the trial level that a particular award of punitive damages is too great a penalty because of his limited financial position," and observed that "the only discussion concerning this matter involved statements of counsel (not before the jury, but in arguments to the court concerning the motion for new trial) to the effect that Mr. In was making $2,000 a month and owned an automobile." (*Greenfield v. Spectrum Inv. Corp.* (1985) 174 Cal.App.3d 111, 124, disapproved of by *Lakin v. Watkins Associated Industries* (1993) 6 Cal. 4th 644.)

Our Supreme Court has since ruled that the burden is on the plaintiff "rather than on the defendant" to introduce evidence of a defendant's financial condition in making a punitive damages assessment. (*Adams*, *supra*, 54 Cal.3d at pp. 108-109.) Additionally, both *Oosterbaan* and *Greenfield* predate our Supreme Court's decision in *Adams*, in which the Court both clarified the burden of proof with respect to the *Neal* factors and stressed that an ability-to-pay analysis is of such import that a punitive damages "award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*." (*Adams*, *supra*, 54 Cal. 3d at p. 111.) In light of this, it is entirely unlikely a court would reach the same conclusion as in *Greenfield*--or offer the same assessment of the conclusion that was given in *Oosterbaan*--today.

## DISPOSITION

"When a punitive damage award is reversed based on the insufficiency of the evidence, no retrial of the issue is required." (*Baxter, supra,* 150 Cal.App.4th at p. 681; see *Kelly, supra,* 145 Cal.App.4th at pp. 919-920.) Accordingly, we remand with directions to vacate the punitive damages award and otherwise affirm the judgment. Appellant shall recover costs on appeal. (Cal. Rules of Court, rule 8.278.)

 

 

 

_____

HULL, J.

I concur:

 

 

_____

BLEASE, Acting P. J.

 

 

I concur in the result:

 

 

_____

HOCH, J.

Filed 6/6/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| JANE DOE et al., | C092065 |
| Plaintiffs and Respondents, | (Super. Ct. No. PC20160359) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| ANDREW KAM LEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Dylan Sullivan, Judge.  Remanded.

Wagner Jones Helsley PC, Jay Aukai Christofferson, John P. Kinsey, and Steven K. Vote for Defendant and Appellant.

Schuering Zimmerman & Doyle, LLP, Robert H. Zimmerman and Alaina T. Dickens for Plaintiffs and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on May 13, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____
BLEASE, Acting P. J.


_____
HULL, J.


I would deny the request to publish.


_____
HOCH, J.

2